

| Judicial Links | | eFiling | | Help | | Contact Us | | Print |

Search for Cases by: Select Search Method...

GrantedPublicAccess  Logoff JAMESLERITZ

### 1522-CC10261 - STARS INVESTMENT GROUP ET AL V AT & T CORP ET AL (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

This information is provided as a service and is not considered an official court record.

Click here to eFile on Case Click here to Respond to Selected Documents Sort Date Entries: ⦿ Descending ○ Ascending    Display Options: [All Entries ▾]

---

**08/07/2015**  ☐ **Jury Trial Scheduled**

 Scheduled For: 01/25/2016; 9:00 AM ; BRYAN L HETTENBACH; City of St. Louis

**08/04/2015**  ☐ **Summons Issued-Circuit**

 Document ID: 15-SMOS-4798, for FOUR WINDS CONSTRUCTION LLC.

 ☐ **Summons Issued-Circuit**

 Document ID: 15-SMCC-17027, for MASTEC NORTH AMERICA, INC..

 ☐ **Summons Issued-Circuit**

 Document ID: 15-SMCC-17026, for AT& T CORPORATION.

 ☐ **Order - Special Process Server**

**07/31/2015**  ☐ **Entry of Appearance Filed**

 Entry of Appearance.
  **Filed By:** PETER ANTHONY CORSALE
  **On Behalf Of:** STARS INVESTMENT GROUP, LLC, STAR'S DESIGN GROUP INC, BRET SCHNITKER, KELLY GREENE

 ☐ **Filing Info Sheet eFiling**

  **Filed By:** ERIC MARTIN TRELZ

 ☐ **Motion Special Process Server**

 Motion for Appointment of Special Process Server.
  **Filed By:** ERIC MARTIN TRELZ
  **On Behalf Of:** STARS INVESTMENT GROUP, LLC, STAR'S DESIGN GROUP INC, BRET SCHNITKER, KELLY GREENE

 ☐ **Pet Filed in Circuit Ct**

 Petition.
  **Filed By:** ERIC MARTIN TRELZ

 ☐ **Judge Assigned**

---

**EXHIBIT**

tabbies®

E

**1522-CC10261**

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

## IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
## STATE OF MISSOURI

STARS INVESTMENT GROUP, LLC,      )
STAR'S DESIGN GROUP, INC., BRET   )
SCHNITKER, AND KELLY GREENE,      )
                                  )
      Plaintiffs,                 )
                                  )
vs.                               )
                                  )
AT&T Corp.,                       )
                                  )
                                  )
<u>Serve:</u>    Corporation Company,     )
       Registered Agent           )
       120 S. Central Ave         )
       St. Louis, MO 63105        )
                                  )
And                               )     Case No:
                                  )
MASTEC NORTH AMERICA, INC.,       )
                                  )
                                  )     Division No.
<u>Serve:</u>    CSC-Lawyers Incorporating )
       Service Company, Registered)
       Agent                      )
       221 Bolivar Street         )
       Jefferson, MO 65101        )
                                  )
And                               )
                                  )
FOUR WINDS CONSTRUCTION LLC,      )
                                  )
<u>Serve:</u>    Bart S. Clark, Registered )
       Agent                      )
       102 N. Marshall St., Ste 2 )
       Slater, IA 50244           )
                                  )
      Defendants.                 )
                                  )

## <u>PETITION</u>

COME NOW Plaintiffs, Stars Investment Group, LLC ("SIG"), Star's Design Group, Inc.

("SDG"), Bret Schnitker, and Kelly Greene (collectively, "Plaintiffs"), by and through their

1

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

counsel of record, and for their causes of action against Defendants AT&T Corp., MasTec North America, Inc., and Four Winds Construction, LLC, state and allege as follows.

## PARTIES, JURISDICTION, AND VENUE

1.　　　Plaintiff, Stars Investment Group, LLC, is a Missouri limited liability company authorized to do business in the State of Missouri with its principal place of business at 2330 Menard Street, St. Louis, Missouri.

2.　　　Plaintiff, Star's Design Group, Inc., is a Missouri corporation authorized to do business in the State of Missouri with its principal place of business at 2330 Menard Street, St. Louis, Missouri.

3.　　　On February 5, 2014, Defendants' actions resulted in a natural gas explosion which destroyed SDG's former principal place of business located at 2222 Menard, St. Louis, Missouri.

4.　　　Plaintiffs Bret Schnitker and Kelly Greene are residents of St. Louis, Missouri and were present at 2222 Menard on the date of the explosion.

5.　　　Defendant AT&T Corp. ("AT&T") is a New York corporation authorized to do business in the State of Missouri with offices at One AT&T Center, Suite 3542, St. Louis, Missouri 63101.

6.　　　AT&T's registered agent for service of process is Corporation Company, 120 S. Central Avenue, Missouri 63105.

7.　　　Defendant MasTec North America, Inc. ("MasTec") is a Florida corporation authorized to conduct business in the State of Missouri with offices at 777 Merus Ct., Fenton, Missouri 63026.

2

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

8.    MasTec's registered agent for service of process is CSC-Lawyers Incorporating Service Company, 221 Bolivar Street, Jefferson City, Missouri 65101.

9.    Defendant Four Winds Construction LLC ("Four Winds") is an Iowa limited liability company with its principal place of business at 102 N. Marshall Street, Suite 2, Slater, Iowa, 50244.

10.   Four Winds's registered agent for service of process is Bart S. Clark, 102 N. Marshall Street, Suite 2, Slater, Iowa, 50244.

11.   The Four Winds crew that worked on the project was from 1100 W. Main St., Beresford, South Dakota, a state in which Four Winds is not registered to do business in.

12.   Personal jurisdiction exists over Defendants under § 506.500 RSMo. because Defendants conducted business in the State of Missouri and have committed tortious acts within the State of Missouri, all actions out of which this dispute arises.

13.   Pursuant to Mo. Rev. Stat. § 508.010, venue is proper in the Circuit Court of the City of St. Louis, Missouri because Defendants' negligent conduct occurred in the City of St. Louis.

14.   Subject matter jurisdiction exists under Article V, Section 14 of the Missouri Constitution because this case involves claims arising under the substantive law of the State of Missouri that exceed $25,000.00, exclusive of interest and costs

## FACTS COMMON TO ALL COUNTS

**A.    SIG**

15.   Prior to the explosion, SIG owned and rented studios, condominiums/row houses, and office space at 2214, 2216, 2218, 2220, and 2222 Menard Street, St. Louis, Missouri.

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

16.     In particular, SIG provided fully furnished corporate housing to its private tenants at 2214, 2216, 2218, 2220, and 2222 Menard.

17.     SIG also rented office space to SDG, a clothing design and manufacturing firm, at 2222 Menard.

18.     Two thousand two hundred twenty-two Menard consisted of a multi-story brick building that housed both commercial tenants, such as SDG, and corporate housing private tenants.

19.     Though purchased in 2004 and 2005 for approximately $558,000 ($330,000 of this attributed solely to 2222 Menard), SIG's properties had undergone over $885,000 of extensive remodeling to accommodate its commercial and private tenants.

20.     At the time of the explosion, 2222 Menard was undergoing additional remodeling that cost, at minimum, $149,944.

**B.     SDG**

21.     SDG can traced its roots to 1993 when Stars Apparel International, Inc. was formed in response to the retail and wholesale industries' desire for high-quality, ethically responsible, manufactured garments. In 2000, SDG when was formed as a spin-off of Stars Apparel International, Inc.

22.     SDG partners with its clients to design, source, produce and deliver custom apparel.

23.     SDG is a custom manufacturer with no "stock" product on hand.

24.     SDG assists with the artistic renderings, production, and delivery of the product for its customers.

25.     Typically, the sales process takes anywhere between five to 40 days.

4

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

26.     SDG operates on a 160 to 180 day lead time from receiving customer commitments to delivering the final product.

27.     After a purchase order is issued, SDG's overseas factories have between ninety to one hundred twenty days to manufacture the product.

28.     Shipping the product and clearing it through U.S. customs takes between forty to sixty days.

29.     The entire process can take upwards to seven to eight months before revenue is realized.

30.     Under SDG's business model, it is imperative that the sales cycle not be interrupted, especially in the early months of the calendar year, because sales realized in February and March will become product that is available for the holiday shopping season in the fall and winter.

31.     At the time of the explosion, SDG's global headquarters was located at 2222 Menard where it oversaw operations in China, Macau, India, Indonesia, Guatemala, Jordan, Bangladesh, Nepal, Korea, Taiwan, Vietnam, Cambodia, and Ethiopia.

32.     The office was a strategic base for clients to visit, spend time, and conduct business.

33.     SDG's headquarters was therefore designed to create the optimum atmosphere conducive to closing business.

34.     Though a tenant, SDG dedicated a substantial amount of resources to the building itself to make it an integral part of SDG's business.

35.     It was more than an office in that it was a unique part of SDG's business.

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

36.     Moreover, in addition to normal office supplies and sample product, SDG displayed various fine art and collectibles, such as an antique Sartika bench and a complete set of NASCAR die cast scale model cars autographed by the associated driver of each car.

## C.     Defendants' Actions Causing the Explosion.

37.     SDG's success necessitated increased data and networking capabilities.

38.     To that end, in late 2013 SDG contracted with AT&T to install fiber optic cables to increase SDG's network capabilities.

39.     The work required AT&T to install additional underground fiber optic lines from AT&T's main line to SDG's business.

40.     The installation of underground fiber optic lines required underground directional boring.

41.     AT&T used independent contractors to install new fiber optic cable by directional boring or other underground installation methods.

42.     Underground directional boring is performed under circumstances where the operator cannot personally see objects that may present dangerous impediments to the work.

43.     Underground directional boring is performed only after utility lines have been located and clearly marked, and is performed by specialized equipment designed to prevent drilling through utility lines.

44.     When directional boring is used to install fiber optic cable, a boring pit is excavated to allow the directional boring drill head to enter the ground.

45.     A second boring pit is then excavated to receive the drill head; a directional bore is made between the two boring pits and then a conduit pipe is pulled back through the bore path.

6

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

46.    If the boring path crosses a marked underground facility, Chapter 319 RSMo. requires the excavator to confirm the horizontal and vertical location of the underground facility.

47.    This confirmation is normally done with a pothole.

48.    A pothole is a hole dug by non-mechanical means (*e.g.*, hand-dig or soft-dig with water and air tools) to expose an underground facility to verify its location and depth.

49.    The directional boring drill head contains a beacon, which allows the user to track and position the boring drill head both horizontally and vertically to avoid hitting any underground facilities.

50.    AT&T contracted with MasTec to install the underground fiber optic cable for SDG.

51.    AT&T's contract with MasTec required MasTec to comply with all applicable laws and regulations.

52.    MasTec subsequently hired Four Winds to install the fiber optic cable.

53.    MasTec had previously provided AT&T with a general notice, through a "Request for use of a Subcontractor" form, that it would be using Four Winds to perform some of the underground construction work AT&T hired MasTec to perform during the relevant time period.

54.    Regardless of the entity involved, AT&T agreed to remain responsible for the performance of any work it subcontracted.

55.    On January 30, 2014, MasTec contacted the Missouri One Call System, Inc. ("MO One Call") and Ticket No. 140301962 ("Ticket") was generated with a "Work to Begin Date" of February 4, 2014.

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

56.     By law, MO One Call must be contacted by the actual excavator prior to excavation work of this magnitude so that all underground facilities, i.e., utility lines and piping, are properly marked.

57.     Laclede Gas Company ("Laclede") supplied natural gas to 2222 Menard through a 2-inch diameter polyethylene (PE) service line.

58.     The natural gas service line was operating at approximately 12 pounds per square inch at the time of the February 5, 2014, explosion.

59.     The Ticket described the type of work as "install fiber optic" for AT&T using a "directional bore machine" and mini-excavator.

60.     The Ticket did not identify Four Winds as the excavator.

61.     The location of the work provided on the Ticket was identified as the east side of Menard Street from Shenandoah Avenue to the rear of 2222 Menard.

62.     On February 3, 2014, United States Infrastructure Corporation ("USIC"), the contract locator for Laclede and other underground facility owners, marked the street, ground and sidewalk surfaces with yellow paint lines to indicate natural gas facilities and orange paint lines to indicate telecommunications facilities in the planned excavation area.

63.     All gas mains and service lines that could have been impacted by directional boring were marked by USIC.

64.     Later that day on February 3, 2014, a representative of MasTec met with the Four Winds supervisor at the site.

65.     At the time the Four Winds supervisor met with MasTec, the site was clearly marked.

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

66.     The Four Winds supervisor has stated that he "walked the job site" on February 3, 2014.

67.     The MasTec representative and Four Winds supervisor should have been aware of the yellow paint lines over the gas service line between the curb and the building because these marks would have been highly visible to anyone making observations of the proposed excavation area.

68.     At all relevant times the City of St. Louis had not issued a work permit which would have allowed Defendants to begin their excavation work.

69.     Additionally, Four Winds had yet to secure a business license to operate in the State of Missouri.

70.     Thus, the City of St. Louis knew nothing about the unapproved work.

71.     Nevertheless, on February 5, 2014, Defendants began their excavation work.

72.     In the instant matter, the Four Winds crew excavated a boring pit on the east side of Menard Street and used this boring pit for a directional bore to the south toward Shenandoah Avenue.

73.     The Four Winds supervisor told the work crew that there was no underground facility in the boring path.

74.     Between February 3, 2014, and February 5, 2014, the greater St. Louis area received 4.5 inches of snow, consequently on February 5, 2014, the safety marking consisting of yellow paint for the gas service line to 2222 Menard Street were covered with snow.

75.     If markings become unusable due to weather or some other cause, § 319.026.6, RSMo. requires the excavator to notify MO One Call and request a remarking.

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

76.    Section 319.026 bars excavators from commencing work within an area described in the ticket if the markings are no longer visible.

77.    Nevertheless, given the instructions the crew received from their supervisor and the absence of markings due to the recent snowfall, the Four Winds crew did not verify the horizontal or vertical location of the gas line via a pothole.

78.    Upon information and belief, the beacon was also missing from the boring drill head, which made it impossible to accurately determine the horizontal and vertical placement of the boring line even if the crew had verified the placement of the gas line.

79.    In violation of Missouri law regarding markings and the requirement to excavate in a careful and prudent manner as well as St. Louis City ordinances regarding the need of a work permit, on February 5, 2014, the Four Winds crew began to bore a hole from the east side of Menard Street to the basement of 2222 Menard.

80.    Indeed, Sue Nekula, an SDG employee, upon arriving the morning of February 5, 2014, and upon noticing that the snow was on the ground and the absence of markings, asked the Four Winds crew, "there is snow on the ground, aren't you going to clear the snow off to see where you should drill?". The Four Winds crewmember responded, that there was "no problem" and that "we [Four Winds] know where we are drilling."

81.    Azem Dullovi, an SDG employee, also arrived the morning of February 5, 2014. An automobile was located in the path of the planned drill site. The Four Winds crew asked Mr. Dullovi to locate the car's owner as Four Winds could not drill in the right direction until the car was moved. Mr. Dullovi searched up and down the street to find the owner to no avail. When Mr. Dullovi returned, he found that Four Winds moved the drill to enter at a different angle to

10

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

get around the car. Mr. Dullovi stated, "you have to move the car to drill at the correct angle." The Four Winds crew rebuked Mr. Dullovi and stated, "It's okay."

82.     Evidently it was not "okay" - the Four Winds crew drilled into the natural gas line resulting in a 2 inch by 1 inch hole in the bottom of the gas line.

83.     The natural gas escaped the hole at a pressure of approximately 12 psig.

84.     The natural gas migrated to the foundation of 2222 Menard through the soil along the service line, and possibly through other soil paths.

85.     Natural gas entering 2222 Menard accumulated to a deadly and explosive mixture somewhere between 4.5% and 15.5% gas in air.

86.     Both Ms. Greene and Mr. Schnitker, along with other SDG employees including Tim Valley, Sue Nekula, Azem Dullovi, and Carmen Barhorst, were present at 2222 Menard on February 5, 2014.

87.     During the boring process, Mr. Schnitker and other persons present at 2222 Menard smelled natural gas and immediately notified the Four Winds crew.

88.     Mr. Dullovi, after smelling the natural gas, approached the Four Winds worker in the hole and stated, "Dude, I smell gas." The worker replied, "It's nothing." Mr. Dullovi pressed forward and stated, "There are people downstairs that are working." Trying to alleviate Mr. Dullovi's fears, the Four Winds worker replied, "Don't worry this smell happens all the time, so don't worry."

89.     As the smell grew stronger, a Four Winds crew member finally called the fire department.

90.     Ms. Nekula was inside the front lobby of the building when she first noticed the strong smell of natural gas. She approached the crew member who walked inside 2222 Menard

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

and stated, "The smell is strong should we evacuate?" The Four Winds worker replied with words to the effect, "We have called the fire and gas department, don't worry about it."

91.     When Tim Valley, SDG's CFO, inquired regarding the strong smell of natural gas, he was told by a Four Winds crew member that "we are aware of the situation and the fire department has been called." Mr. Valley then asked the crew member whether the SDG employees needed to evacuate. The Four Winds crew member said, words to the effect, "Don't worry about it." Mr. Valley then went back into the building and immediately attempted to pack materials due to the strong smell of natural gas. Mr. Valley's packing efforts were thwarted when the fire department officials told the employees to immediately evacuate the building.

92.     Smelling the natural gas, Carmen Barhorst, Director of SDG's Logistics, walked outside and was directed by a fireman to leave the building "now."

93.     The building was evacuated after the arrival of the fire department.

94.     After performing a head count, Mr. Schnitker realized that two individuals were still in the building; so, he went back in, located them and got them out.

95.     At the entrance to the building was an ornate iron gate that welcomed vistitors into the grounds of 2222 Menard. After all SDG personnel evacuated building, a Four Winds crew member was still inside the gate, and yelled for Mr. Dullovi to open the gate as the other crew members were running away and he could not get out. The smell was so strong that Mr. Dullovi could not speak or breathe. Nevertheless, he opened the gate and the Four Winds crew member asked Mr. Dullovi to help pull the drill out of the hole that was going into the building and to hold the gate open. Still unable to move the drill, the crew member ran away leaving Mr. Dullovi holding the drill and gate.

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

96.     At approximately 1:10 p.m. on February 5, 2014, the natural gas ignited thereby causing an explosion and fire.

97.     The explosion hurled Mr. Dullovi into the iron gate.

98.     The explosion and resulting fire completely destroyed 2222 Menard and damaged adjacent properties owned by SIG.

99.     The explosion also shook and damaged residential property in the immediate area causing extensive damage to the properties.

100.    The St. Louis Fire Department notified Laclede of the gas explosion and fire at approximately 1:17 p.m.

101.    Approximately ten minutes later a Laclede technician arrived to assess the scene and investigate the leak.

102.    The leak required an evacuation of nearby residents – all of the buildings on Menard Street between Shenandoah Avenue and Anne Avenue; 2300 Menard Street, and 1015, 1017, and 1019 Shenandoah Avenue were evacuated between 1:17 and 2:00 p.m.

103.    At approximately 2:10 p.m., Laclede personnel discovered elevated subsurface natural gas readings of 56% and 76% gas-in-air along the street curb in front of 2219-2227 Menard, which caused Laclede to expand the restricted zone.

104.    The St. Louis Metropolitan Police Department assisted in the emergency response by closing nearby streets and intersections.

105.    At the request of Laclede, Ameren Missouri cut electrical power to the buildings surrounding 2222 Menard at 2:40 p.m.

106.    In the midst of one of the coldest winters in St. Louis, Laclede personnel were forced to shut off gas to a total of 45 customers.

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

107.    The Laclede technicians turned off the service line valve to 2222 Menard, but this did not stop the flow of natural gas escaping from the damaged service line because the damage to the line was so extensive that it required Laclede to excavate, expose the line, and pinch the line to stop the flow of natural gas. The line was "squeezed-off" at three different locations to stop the flow of natural gas. It was not until 4:54 p.m. when Laclede personnel were able to stop the flow of natural gas.

108.    The St. Louis Fire Department intentionally let the structure at 2222 Menard burn so that excess gas could be removed from the area and avoid explosions in the neighboring blocks.

109.    It was not until February 6, 2014, when natural gas was restored to all customers; however, Laclede continued to air-jack the natural gas from the subsurface and monitor the gas levels 24 hrs per day until February 9, 2014.

110.    By then 2222 Menard was a burned out structure.

111.    The building was a total loss and was later demolished.

112.    Estimates reveal that the reconstruction of 2222 Menard will cost in excess of $1,600,000.

**D.    Defendants' Actions Violated Several Safety Statutes**

113.    Section 319.025, RSMo., provides in relevant part, "a person shall not make or begin any excavation in any public street, road or alley, right-of-way dedicated to the public use or utility easement of record or within any private street or private property without first giving notice to the notification center and obtaining information concerning the possible location of any underground facilities which may be affected by said excavation from underground facility owners whose names appear on the current list of participants in the notification center and who

14

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

were communicated to the excavator as notification center participants who would be informed of the excavation notice."

114.    Section 319.026.6, RSMo., further provides: "When markings have been provided in response to a notice of intent to excavate, excavators may commence or continue to work within the area described in the notice for *so long as the markings are visible*. If an excavator is unable to begin the excavation within ten working days as described in the request, the excavator shall make a relocate request before beginning the excavation. *If markings become unusable due to weather, construction or other cause, the excavator shall contact the notification center to request remarking.* Such notice shall be given in the same manner as original notice of intent to excavate, and the owner or operator shall remark the site in the same manner, within the same time, as required in response to an original notice of intent to excavate. Each excavator shall exercise reasonable care not to unnecessarily disturb or obliterate markings provided for location of underground facilities."

115.    Section 319.026.7, RSMo., states, "Before commencing excavation, the excavator shall determine best practices for confirming the horizontal and vertical location of facilities at the site of excavation considering conditions at the site including geology, access to the site, and the presence of paved surfaces. Hand digging or soft digging shall be used as a best practice when possible."

116.    Pursuant to § 319.035, RSMo., failure to abide by sections 319.025 or 319.026 shall create "a rebuttable presumption of negligence on his or her part in the event that such failure shall cause injury, loss, or damage."

50320722.3

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

## COUNT I
## NEGLIGENCE PER SE
### (SIG v. Four Winds)

117.    Paragraphs 1 through 116 of this Petition are incorporated by reference as if fully set forth herein.

118.    Because Four Winds was the actual excavator performing the excavation work, Four Winds, by law, was obligated to contact MO One Call regarding the work.

119.    Four Winds failed to comply with § 319.025 by failing to contact MO One Call and providing it with the information required under § 319.025.2, RSMo.

120.    Section 319.026 further bans all excavation work should the markings no longer be visible.

121.    Here, due to the recent snowfall, the markings were no longer visible; thus, by law, Four Winds was required to cease all excavation work and contact MO One Call so that the area could be re-marked.

122.    Four Winds failed to abide by § 319.026, RSMo., as it proceeded to bore even though all relevant markings were covered by snowfall and no longer visible.

123.    The purpose of the safety statutes found in Chapter 319 is to prevent excavators, such as Four Winds, from damaging underground facilities and causing greater damage such as the damage seen herein.

124.    Four Winds's failure to abide by the safety statutes of § 319.025 and 319.026 led to Four Winds drilling through an underground natural gas line, which caused gas to build up at 2222 Menard which was then ignited resulting in an explosion that destroyed 2222 Menard and damaged nearby properties owned by SIG.

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

125.    The statute was designed to protect property owners such as SIG who could be harmed by excavators drilling holes in natural gas lines.

126.    SIG's damages resulting from Four Winds's failure to abide by Chapter 319 are devastating.

127.    In particular, SIG has sustained the following losses (a non-exclusive list): loss rental income related to 2222 Menard, 2220 Menard, 2214 Menard, 2216 Menard, the complete loss of 2222 Menard, damage to 2214, 2216, and 2220 Menard, and the complete loss of personal property located within the units found at 2222 Menard (SIG leased fully furnished units at 2222 Menard to private individuals along with its commercial lease to Star's Design Group).

128.    Four Winds's actions in this regard were taken with gross negligence and/or with willful and wanton disregard for the rights of SIG and therefore subjects Four Winds to punitive damages.

129.    The Missouri Public Service Commission, after a full inspection of this incident, determined that the damage was caused by the gross incompetence displayed by Four Winds.

WHEREFORE, SIG respectfully prays that this court enter judgment in favor of SIG and against Four Winds and award SIG actual and compensatory damages, special damages in the form of loss profits and other business interruption damages, punitive damages, and for SIG's costs, attorneys' fees, and any other relief this court may deem just and proper.

## COUNT II
## NEGLIGENCE
### (SIG v. Four Winds and MasTec)

130.    Paragraphs 1 through 116 of this Petition are incorporated by reference as if fully set forth herein.

17

50320722.3

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

131.   On February 3, 2014, after USIC marked all relevant underground facilities in the proposed work area, MasTec representatives met with the supervisor for Four Winds and inspected the proposed work site.

132.   Four Winds and MasTec knew or should have known of the existence of the natural gas pipe lines in that USIC properly marked the excavation site and the Four Winds and MasTec supervisors walked the job site after USIC marked the site.

133.   Both Four Winds and MasTec failed to identify USIC's markings that identified the location of a natural gas line.

134.   Four Winds and MasTec knew or should have known that the proposed boring path would cross the path of a natural gas pipe line.

135.   Four Winds failed to comply § 319.025 by failing to contact MO One Call and providing it with the information required under § 319.025.2, RSMo.

136.   Four Winds and MasTec failed to abide by § 319.026, RSMo., as it proceeded to bore even though all relevant markings were covered by snowfall and no longer visible.

137.   Both common law and § 319.035.1, RSMo., requires Four Winds and MasTec to excavate in a safe and prudent manner.

138.   Four Winds and MasTec breached this duty by, amongst other items:

    a.   failing to abide by the safety statutes of §§ 319.025 and 319.026;

    b.   failing to properly inspect the excavation site to determine the location of USIC markings, which, in turn, would have identified the location of the underground natural gas line;

    c.   failing to remove the snow to reveal the USIC markings;

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

    d.  failing to dig a pothole to unearth the natural gas line so that proper measurements could be taken regarding its location and so that the directional boring equipment could successfully navigate around the line;

    e.  failing to install a beacon in the drilling head of the directional borer so that the drilling head could be safely guided;

    f.  failing to properly prepare the area before beginning the excavation work;

    g.  failing to obtain a permit for the work;

    h.  failing to timely identify the release of natural gas;

    i.  failing to cease work after it should have realized that natural gas had been released causing the spark that ignited the natural gas;

    j.  failing to call proper authorities in a timely manner after realizing that it struck the natural gas line causing the release of natural gas;

    k.  failing to recognize the dangerous condition they created;

    l.  failing to respond appropriately to the situation they created; and/or

    m.  by otherwise acting negligently in the performance of the excavation work.

139.    MasTec further breached this duty by failing to advise Four Winds that the proposed boring path intersected with the underground natural gas line.

140.    Four Winds's failure to excavate in a safe and prudent matter led to Four Winds's drilling through an underground natural gas line, which caused natural gas to build up at 2222 Menard.

141.    MasTec's failures contributed to the Four Winds crew striking the natural gas line.

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

142. Had MasTec fully apprised Four Winds of these issues, certain safeguards (such as searching for the buried markings and/or creating a pothole to identify the location of the natural gas line) could have been taken.

143. Due to Four Winds and MasTec's failures, the natural gas was then ignited and resulted in an explosion that destroyed 2222 Menard and damaged nearby properties owned by SIG.

144. Four Winds and MasTec had a duty to SIG and other property owners to operate in a safe and prudent matter to avoid such foreseeable tragedies.

145. Indeed, the statutes listed above were designed to protect property owners such as SIG who could be harmed by excavators drilling holes in natural gas lines.

146. Similarly, Four Winds and MasTec's obligation to secure a valid work permit was also designed to avoid such foreseeable tragedies.

147. As Richard Gray, the St. Louis Public Safety Director, accurately summed up after the explosion, "It's [not obtaining a work permit] like not having referees at a basketball game...we need people there to make sure they do the right things the correct way."

148. SIG's damages resulting from Four Winds and MasTec's gross negligence are devastating.

149. In particular, SIG has sustained the following losses (a non-exclusive list): loss rental income related to 2222 Menard, 2220 Menard, 2214 Menard, 2216 Menard, the complete loss of 2222 Menard, damage to 2214, 2216, and 2220 Menard, and the complete loss of personal property located within the units found at 2222 Menard (SIG leased fully furnished units at 2222 Menard to private individuals along with its commercial lease to Star's Design Group).

50320722.3

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

150.    Four Winds and MasTec's actions in this regard were taken with gross negligence and/or with willful and wanton disregard for the rights of SIG and therefore subjects them to punitive damages.

151.    The Missouri Public Service Commission, after a full inspection of this incident, was left dumbfounded by the gross incompetence displayed by Four Winds and MasTec.

WHEREFORE, SIG respectfully prays that this court enter judgment in favor of SIG and against Four Winds and MasTec, jointly and severally, and award SIG actual and consequential damages, special damages including lost profits and business interruption damages, punitive damages, and for SIG's costs, attorneys' fees, and any other relief this court may deem just and proper.

## COUNT III
## RESPONDEAT SUPERIOR
### (SIG v. AT&T)

152.    Paragraphs 1 through 116 of this Petition are incorporated by reference as if fully set forth herein.

153.    AT&T represented that it would "remain financially responsible for the performance of [its subcontractor's] obligations."

154.    AT&T exercised control over the details of the excavation and installation work of its fiber optic cables.

155.    On multiple occasions AT&T representatives visited the worksite and developed a construction plan related to the installation of the underground fiber optic cables.

156.    AT&T supplied the material that was to be installed by MasTec and/or Four Winds.

157.    AT&T contracts with MasTec to install such fiber optic lines.

50320722.3

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

158.    AT&T is also aware that Four Winds is and/or was an excavator used to install AT&T's fiber optic lines.

159.    As set forth in Counts I-II, which are fully incorporated herein, Four Winds and MasTec's gross incompetence and negligence resulted in the complete destruction of 2222 Menard and damage to SIG's adjacent properties.

160.    Such acts and omissions were committed within the scope or apparent scope of MasTec and Four Winds's association with AT&T, and, as such, AT&T is vicariously liable to SIG to the same extent as MasTec and/or Four Winds.

161.    In particular, SIG has sustained the following losses (a non-exclusive list): loss rental income related to 2222 Menard, 2220 Menard, 2214 Menard, 2216 Menard, the complete loss of 2222 Menard, damage to 2214, 2216, and 2220 Menard, and the complete loss of personal property located within the units found at 2222 Menard (SIG leased fully furnished units at 2222 Menard to private individuals along with its commercial lease to Star's Design Group).

162.    AT&T's actions in this regard were taken with gross negligence and/or with willful and wanton disregard for the rights of SIG and therefore subjects AT&T to punitive damages.

WHEREFORE, SIG respectfully prays that this court enter judgment in favor of SIG and against AT&T and award SIG actual and compensatory damages, special damages including lost profits and business interruption damages, punitive damages, and for SIG's costs, attorneys' fees, and any other relief this court may deem just and proper.

22

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

**COUNT IV**
**RESPONDEAT SUPERIOR**
**(SIG v. MasTec)**

163.    Paragraphs 1 through 116 of this Petition are incorporated by reference as if fully set forth herein.

164.    As set forth in Counts I-II, which are fully incorporated herein, Four Winds's gross incompetence and negligence resulted in the complete destruction of 2222 Menard and damage to SIG's adjacent properties.

165.    Such acts and omissions were committed within the scope or apparent scope of Four Winds's association with MasTec, and as such MasTec is vicariously liable to SIG to the same extent as Four Winds.

166.    In particular, SIG has sustained the following losses (a non-exclusive list): loss rental income related to 2222 Menard, 2220 Menard, 2214 Menard, 2216 Menard, the complete loss of 2222 Menard, damage to 2214, 2216, and 2220 Menard, and the complete loss of personal property located within the units found at 2222 Menard (SIG leased fully furnished units at 2222 Menard to private individuals along with its commercial lease to Star's Design Group).

167.    MasTec's actions in this regard were taken with gross negligence and/or with willful and wanton disregard for the rights of SIG and therefore subjects MasTec to punitive damages.

WHEREFORE, SIG respectfully prays that this court enter judgment in favor of SIG and against MasTec and award SIG actual and consequential damages, special damages including lost profits and business interruption damages, punitive damages, and for SIG's costs, attorneys' fees, and any other relief this court may deem just and proper

50320722.3

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

## COUNT V
## RES IPSA LOQUITUR
### (SIG v. Defendants)

168.    Paragraphs 1 through 116 of this Petition are incorporated by reference as if fully set forth herein.

169.    Both common law and § 319.035.1, RSMo., requires Defendants to excavate in a safe and prudent manner.

170.    Upon information and belief, Defendants breached this duty by, amongst other items:

    a.  failing to abide by the safety statutes of §§ 319.025 and 319.026;

    b.  failing to properly inspect the excavation site to determine the location of USIC markings, which, in turn, would have identified the location of underground natural gas line;

    c.  failing to remove the snow to reveal the USIC markings;

    d.  failing to dig a pothole to unearth the natural gas line so that proper measurements could be taken regarding its location and so that the directional boring equipment could successfully navigate around the line;

    e.  failing to install a beacon in the drilling head of the directional borer so that the drilling head could be safely guided;

    f.  failing to properly prepare the area before beginning the excavation work;

    g.  failing to obtain a permit for the work;

    h.  failing to identify the release of natural gas;

    i.  failing to cease work after it should have realized that natural gas had been released causing the spark that ignited the natural gas;

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

j.   failing to call proper authorities in a timely manner after realizing that it struck the natural gas line causing the release of natural gas;

k.   failing to timely recognize the dangerous condition they created;

l.   failing to respond appropriately to the situation they created;

m.   failing to advise Four Winds that the proposed boring path intersected with the underground natural gas line;

n.   failing to comprehend that the yellow markings that were seen or should have been seen during the February 3, 2014, walk-through indicated a natural gas line was present; and/or

o.   by otherwise acting negligently in the performance of the excavation work.

171.   Defendants' failure to excavate in a safe and prudent matter led to the drill bit piercing an underground natural gas line, which caused natural gas to build up at 2222 Menard.

172.   The natural gas was then ignited and resulted in an explosion that destroyed 2222 Menard and damaged nearby properties owned by SIG.

173.   Defendants had a duty to SIG and other property owners to operate in a safe and prudent matter to avoid such foreseeable tragedies.

174.   Indeed, the statutes listed above were designed to protect property owners such as SIG who could be harmed by excavators drilling holes in natural gas lines.

175.   The explosion and fire is of the kind of which ordinarily occurs due to someone's negligence.

176.   The explosion and fire was caused by an instrumentality, namely the boring activities, under the control of Defendants.

50320722.3

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

177.    Defendants have superior knowledge or access to information as to how they caused the explosion and fire.

178.    SIG's damages resulting from Defendants' gross negligence are substantial.

179.    In particular, SIG has sustained the following losses (a non-exclusive list): loss rental income related to 2222 Menard, 2220 Menard, 2214 Menard, 2216 Menard, the complete loss of 2222 Menard, damage to 2214, 2216, and 2220 Menard, and the complete loss of personal property located within the units found at 2222 Menard (SIG leased fully furnished units at 2222 Menard to private individuals along with its commercial lease to Star's Design Group).

180.    Defendants' actions in this regard were taken with gross negligence and/or with willful and wanton disregard for the rights of SIG and therefore subjects Defendants to punitive damages.

181.    The Missouri Public Service Commission, after a full inspection of this incident, determined that the damage was caused by the gross incompetence displayed by Defendants.

WHEREFORE, SIG respectfully prays that this court enter judgment in favor of SIG and against Defendants, jointly and severally, and award SIG actual and compensatory damages, special damages including lost profits and business interruption damages, punitive damages, and for SIG's costs, attorneys' fees, and any other relief this court may deem just and proper.

## COUNT VI
## NEGLIGENT HIRING/RETENTION
### (SIG v. AT&T and MasTec)

182.    Paragraphs 1 through 116 of this Petition are incorporated by reference as if fully set forth herein.

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

183.    Though the crew was based in South Dakota, Four Winds has failed to register with the South Dakota Secretary of State to do business in the State of South Dakota.

184.    Likewise, Four Winds has failed to register with the Missouri Secretary of State to do business in the State of Missouri and further failed to obtain the necessary permits from the City of St. Louis.

185.    Four Winds was unqualified to perform the work it was hired to do.

186.    For example, after Four Winds ruptured the natural gas line, when Mr. Dullovi asked the crew if the fire department should be called, one of the crew members said, words to the effect, "No, that happens all the time when we drill."

187.    Four Winds's failure to locate the markings provided by USIC and/or follow state and local statute and regulations further demonstrates Four Winds's ineptitude.

188.    Four Winds should have been trained to follow Missouri statutes and regulations, which were all designed with safety in mind.

189.    Had Four Winds followed Missouri law and regulations, the gas line would have been identified and the disaster averted.

190.    AT&T and MasTec's failure to qualify, train, or supervise the excavation work contributed to and/or caused the February 5, 2014 explosion.

191.    Given the Four Winds's crew prior statements, the crew's misconduct was consistent with Four Winds's dangerous proclivities.

192.    AT&T and MasTec knew or should have known of Four Winds's ineptitude.

193.    Based on the foregoing, AT&T and MasTec failed to hire a skilled and competent contractor.

194.    SIG's damages resulting from the incident are substantial.

50320722.3

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

195.    In particular, SIG has sustained the following losses (a non-exclusive list): loss rental income related to 2222 Menard, 2220 Menard, 2214 Menard, 2216 Menard, the complete loss of 2222 Menard, damage to 2214, 2216, and 2220 Menard, and the complete loss of personal property located within the units found at 2222 Menard (SIG leased fully furnished units at 2222 Menard to private individuals along with its commercial lease to Star's Design Group).

196.    AT&T and MasTec's actions in this regard were taken with gross negligence and/or with willful and wanton disregard for the rights of SIG and therefore subjects them to punitive damages.

WHEREFORE, SIG respectfully prays that this court enter judgment in favor of SIG and against AT&T and MasTec, jointly and severally, and award SIG actual and consequential damages, special damages including lost profits and business interruption damages, punitive damages, and for SIG's costs, attorneys' fees, and any other relief this court may deem just and proper.

**COUNT VII**
**NEGLIGENT SUPERVISION**
**(SIG v. AT&T and MasTec)**

197.    Paragraphs 1 through 116 of this Petition are incorporated by reference as if fully set forth herein.

198.    Given Four Winds's incompetence as set forth in Paragraphs 37 through 151 and 183 through 196, which are incorporated herein by reference, AT&T and MasTec had a duty to supervise the work of Four Winds.

199.    AT&T and MasTec's breach of that duty directly caused SIG's damages.

28

50320722.3

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

200.   In particular, SIG has sustained the following losses (a non-exclusive list): loss rental income related to 2222 Menard, 2220 Menard, 2214 Menard, 2216 Menard, the complete loss of 2222 Menard, damage to 2214, 2216, and 2220 Menard, and the complete loss of personal property located within the units found at 2222 Menard (SIG leased fully furnished units at 2222 Menard to private individuals along with its commercial lease to Star's Design Group).

201.   AT&T and MasTec's actions in this regard were taken with gross negligence and/or with willful and wanton disregard for the rights of SIG and therefore subjects them to punitive damages.

WHEREFORE, SIG respectfully prays that this court enter judgment in favor of SIG and against AT&T and MasTec, jointly and severally, and award SIG actual and compensatory damages, special damages including lost profits and business interruption damages, punitive damages, and for SIG's costs, attorneys' fees, and any other relief this court may deem just and proper.

### COUNT VIII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Greene and Schnitker v. Defendants)

202.   Paragraphs 1 through 116 of this Petition are incorporated by reference as if fully set forth herein.

203.   On February 5, 2015, Bret Schnitker and Kelly Greene were present at 2222 Menard.

204.   Defendants had a duty to work in a safe and prudent matter.

205.   Moreover, Defendants had a duty to Mr. Schnitker, Ms. Greene, and all others who were present at 2222 Menard as it was reasonably foreseeable that the their actions would affect persons located near the drilling site.

29

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

206.    Even prior to drilling, two SDG employees with no knowledge of proper drilling techniques questioned Defendants on their methods.

207.    Additionally, shortly after Defendants began drilling, numerous employees of SDG noticed the unmistakable odor of natural gas and duly informed Defendants of the same.

208.    One of the crew members responded to the SDG's employees inquiries with words to the effect, "No, that happens all the time when we drill."

209.    As the smell grew stronger, the fire department was called.

210.    The fire department directed everyone to evacuate, including Mr. Schnitker and Ms. Greene.

211.    After performing a head count, Mr. Schnitker realized that two individuals were still in the building; so, he went back in, located them and got them out.

212.    Approximately ninety seconds later, the building exploded.

213.    One of Mr. Schnitker's co-workers, Mr. Dullozi, was hurled into a metal gate due to the concussion emanating from the blast.

214.    Mr. Schnitker and Ms. Greene were forced to duck and cover out of fear for their lives.

215.    As set forth in the foregoing paragraphs, which are incorporated herein, Defendants' crew struck a natural gas line, which caused the gas to permeate through the soil and into the basement of 2222 Menard, wherein it was then ignited causing the explosion.

216.    Moreover, both common law and § 319.035.1, RSMo., requires Defendants to excavate in a safe and prudent manner.

217.    Defendants breached their duty owed to Mr. Schnitker and Ms. Greene by, amongst other items:

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

a.  failing to properly inspect the excavation site to determine the location of USIC markings, which, in turn, would have identified the location of underground natural gas line;

b.  failing to remove the snow to reveal the USIC markings;

c.  failing to dig a pothole to unearth the natural gas line so that proper measurements could be taken regarding its location and so that the directional boring equipment could successfully navigate around the line;

d.  failing to install a beacon in the drilling head of the directional borer so that the drilling head could be safely guided;

e.  failing to properly prepare the area before beginning the excavation work;

f.  failing to obtain a permit for the work;

g.  failing to timely identify the release of natural gas;

h.  failing to cease work after it should have realized that natural gas had been released causing the spark that ignited the natural gas;

i.  failing to call proper authorities in a timely manner after realizing that it struck the natural gas line causing the release of natural gas;

j.  failing to recognize the dangerous condition they created;

k.  failing to respond appropriately to the situation they created;

l.  failing to advise Four Winds that the proposed boring path intersected with the underground natural gas line;

m. failing to comprehend that the yellow markings that were seen or should have been seen during the February 3, 2014, walk-through indicated a natural gas line was present;

31

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

    n.  negligently hiring Four Winds as more fully described in Count VII;

    o.  negligently supervising Four Winds as described in Count VIII; and/or

    p.  by otherwise acting negligently in the performance of the excavation work.

218.    Defendants' failure to excavate in a safe and prudent matter led to Defendants drilling through an underground natural gas line, which caused natural gas to build up at 2222 Menard, detonate, and destroy 2222 Menard.

219.    Defendants should have realized that their conduct involved an unreasonable risk of causing distress.

220.    Indeed, such fly by night tactics are unreasonable in light of the damage that could be and was caused.

221.    Due to Defendants' actions, Ms. Greene has suffered from:

    a.  extreme exhaustion;

    b.  stress and anxiety;

    c.  sleeplessness;

    d.  upsetting dreams of the explosion and fire;

    e.  easily startled by loud noises;

    f.  recurrent, unwanted distressing memories of the explosion and fire;

    g.  reliving the event as if it were happening again;

    h.  being emotionally numb;

    i.  hypersensitivity so as to be always on guard and easily startled;

    j.  trouble concentrating; and

    k.  is hesitant around any natural gas.

222.    Due to Defendants' actions, Mr. Schnitker has suffered from:

50320722.3

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

    a.  extreme exhaustion;

    b.  stress and anxiety;

    c.  sleeplessness;

    d.  upsetting dreams of the explosion and fire;

    e.  recurrent, unwanted distressing memories of the explosion and fire;

    f.  reliving the event as if it were happening again;

    g.  being emotionally numb;

    h.  hypersensitivity so as to be always on guard and easily startled;

    i.  trouble concentrating; and

    j.  hopelessness regarding the possibility of living the life he was previously building.

223.    Ms. Greene and Mr. Schnitker suffered from the aforementioned maladies for months.

224.    Indeed, they still experience some of the anguish described above more than a year after experiencing the catastrophic event.

225.    Defendants' actions in this regard were taken with gross negligence and/or with willful and wanton disregard for the rights of Mr. Schnitker and Ms. Greene and therefore subjects them to punitive damages.

WHEREFORE, Plaintiffs Bret Schnitker and Kelly Greene respectfully pray that this court enter judgment in favor of them and against Defendants, jointly and severally, and award them damages, punitive damages, and for their costs, attorneys' fees, and any other relief this court may deem just and proper.

33

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

## COUNT IX
## NEGLIGENCE PER SE
### (SDG v. Four Winds)

226.    Paragraphs 1 through 116 of this Petition are incorporated by reference as if fully set forth herein

227.    Because Four Winds was the actual excavator performing the excavation work, Four Winds, by law, was obligated to contact MO One Call regarding the work.

228.    Four Winds failed to comply with § 319.025 by failing to contact MO One Call and providing it with the information required under § 319.025.2, RSMo.

229.    Section 319.026 further bans all excavation work should the markings no longer be visible.

230.    Here, due to the recent snowfall, the markings were no longer visible; thus, by law, Four Winds was required to cease all excavation work and contact MO One Call so that the area could be re-marked.

231.    Four Winds failed to abide by § 319.026, RSMo., as it proceeded to bore even though all relevant markings were covered by snowfall and no longer visible.

232.    The purpose of the safety statutes found in Chapter 319 is to prevent excavators, such as Four Winds, from damaging underground facilities and causing greater damage such as the damage seen herein.

233.    Four Winds's failure to abide by the safety statutes of § 319.025 and 319.026 led to Four Winds drilling through an underground natural gas line, which caused gas to build up at 2222 Menard which was then ignited resulting in an explosion that destroyed SDG's headquarters and damaged nearby properties.

34

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

234.    The statute was designed to protect residents such as SDG who could be harmed by excavators drilling holes in natural gas lines.

235.    SDG's damages resulting from Four Winds's failure to abide by Chapter 319 are devastating.

236.    In particular, SDG has sustained the following losses (a non-exclusive list): product, fine art and collectibles, real property improvements, work-product (as an art, graphic, and design business much of SDG's work product was stored on computers that were lost in the explosion and fire), employee time that was spent dedicated to the resulting aftermath of the explosion and fire, and not on the normal day-to-day activities of the business, business interruption damages in the form of loss sales, i.e., profits, and/or chargebacks to customers due to missed deadlines, and increased interest charges due to lag times.

237.    Simply put, the destruction of SDG's headquarters shuttered its business for at least two months and otherwise delayed potential sales for much longer.

238.    Four Winds's actions in this regard were taken with gross negligence and/or with willful and wanton disregard for the rights of SDG and therefore subjects Four Winds to punitive damages.

239.    The Missouri Public Service Commission, after a full inspection of this incident, determined that the damage was caused by the gross incompetence displayed by Four Winds.

WHEREFORE, SDG respectfully prays that this court enter judgment in favor of SDG and against Four Winds and award SDG actual and compensatory damages, special damages including lost profits and other business interruption damages, punitive damages, and for SDG's costs, attorneys' fees, and any other relief this court may deem just and proper.

50320722.3

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

## COUNT X
## NEGLIGENCE
### (SDG v. Four Winds and MasTec)

240.     Paragraphs 1 through 116 of this Petition are incorporated by reference as if fully set forth herein.

241.     On February 3, 2014, after USIC marked all relevant underground facilities in the proposed work area, MasTec representatives met with the supervisor for Four Winds and inspected the proposed work site.

242.     Four Winds and MasTec knew or should have known of the existence of the natural gas pipe lines in that USIC properly marked the excavation site and the Four Winds and MasTec supervisors walked the job site after USIC marked the site.

243.     Both failed to identify USIC's markings that identified the location of a natural gas line.

244.     Four Winds and MasTec knew or should have known that the proposed boring path would cross the path of a natural gas pipe line.

245.     Four Winds failed to comply § 319.025 by failing to contact MO One Call and providing it with the information required under § 319.025.2, RSMo.

246.     Four Winds failed to abide by § 319.026, RSMo., as it proceeded to bore even though all relevant markings were covered by snowfall and no longer visible.

247.     Both common law and § 319.035.1, RSMo., requires Four Winds and MasTec to excavate in a safe and prudent manner.

248.     Four Winds and MasTec breached this duty by, amongst other items:

a.    failing to abide by the safety statutes of §§ 319.025 and 319.026;

36

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

b.  failing to properly inspect the excavation site to determine the location of USIC markings, which, in turn, would have identified the location of underground natural gas line;

c.  failing to remove the snow to reveal the USIC markings;

d.  failing to dig a pothole to unearth the natural gas line so that proper measurements could be taken regarding its location and so that the directional boring equipment could successfully navigate around the line;

e.  failing to install a beacon in the drilling head of the directional borer so that the drilling head could be safely guided;

f.  failing to properly prepare the area before beginning the excavation work;

g.  failing to obtain a permit for the work;

h.  failing to identify the release of natural gas;

i.  failing to cease work after it should have realized that natural gas had been released causing the spark that ignited the natural gas;

j.  failing to call proper authorities in a timely manner after realizing that it struck the natural gas line causing the release of natural gas;

k.  failing to recognize the dangerous condition they created;

l.  failing to respond appropriately to the situation they created; and/or

m.  by otherwise acting negligently in the performance of the excavation work.

249.   MasTec further breached this duty by failing to advise Four Winds that the proposed boring path intersected with the underground natural gas line.

50320722.3

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

250.   Four Winds's failure to excavate in a safe and prudent matter led to Four Winds's drilling through an underground natural gas line, which caused natural gas to build up at 2222 Menard.

251.   MasTec's failures contributed to the Four Winds crew striking the natural gas line.

252.   Had MasTec fully apprised Four Winds of these issues, certain safeguards (such as searching for the buried markings and/or creating a pothole to identify the location of the natural gas line) could have been taken.

253.   Due to Four Winds and MasTec's failures, the natural gas was then ignited and resulted in an explosion that destroyed 2222 Menard.

254.   Four Winds and MasTec had a duty to SIG and other property owners to operate in a safe and prudent matter to avoid such foreseeable tragedies.

255.   Indeed, the statutes listed above were designed to protect residents such as SDG who could be harmed by excavators drilling holes in natural gas lines.

256.   Similarly, Four Winds and MasTec's obligation to secure a valid work permit was also designed to avoid such foreseeable tragedies.

257.   As Richard Gray, the St. Louis Public Safety Director, accurately summed up after the explosion, "It's [not obtaining a work permit] like not having referees at a basketball game…we need people there to make sure they do the right things the correct way."

258.   SDG's damages resulting from Four Winds and MasTec's gross negligence are devastating.

259.   In particular, SDG has sustained the following losses (a non-exclusive list): product, fine art and collectibles, real property improvements, work-product (as an art, graphic,

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

and design business much of SDG's work product was stored on computers that were lost in the explosion and fire), employee time that was spent dedicated to the resulting aftermath of the explosion and fire, and not on the normal day-to-day activities of the business, business interruption damages in the form of loss sales, i.e., profits, and/or chargebacks to customers due to missed deadlines, and increased interest charges due to lag times.

260.    Simply put, the destruction of SDG's headquarters shuttered its business for at least two months and otherwise delayed potential sales for much longer.

261.    Four Winds and MasTec's actions in this regard were taken with gross negligence and/or with willful and wanton disregard for the rights of SDG and therefore subjects them to punitive damages.

262.    The Missouri Public Service Commission, after a full inspection of this incident, determined that the damage was caused by the gross incompetence displayed by Four Winds.

WHEREFORE, SDG respectfully prays that this court enter judgment in favor of SDG and against Four Winds and MasTec, jointly and severally, and award SDG actual and compensatory damages, special damages including lost profits and other business interruption damages, punitive damages, and for SDG's costs, attorneys' fees, and any other relief this court may deem just and proper.

## COUNT XI
## RESPONDEAT SUPERIOR
## (SDG v. AT&T)

263.    Paragraphs 1 through 116 of this Petition are incorporated by reference as if fully set forth herein.

264.    AT&T represented that it would "remain financially responsible for the performance of [its subcontractor's] obligations."

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

265.    AT&T exercised control over the details of the excavation and installation work of its fiber optic cables.

266.    On multiple occasions AT&T representatives visited the worksite and developed a construction plan related to the installation of the underground fiber optic cables.

267.    AT&T supplied the material that was to be installed by MasTec and/or Four Winds.

268.    AT&T contracts with MasTec to install such fiber optic lines.

269.    AT&T is also aware that Four Winds is and/or was an excavator used to install AT&T's fiber optic lines.

270.    As set forth in Counts IX-X, which are fully incorporated herein, Four Winds and MasTec's gross incompetence and negligence resulted in the complete destruction of SDG's headquarters.

271.    Such acts and omissions were committed within the scope or apparent scope of MasTec and Four Winds's association with AT&T, and as such AT&T is vicariously liable to SDG to the same extent as MasTec and/or Four Winds.

272.    In particular, SDG has sustained the following losses (a non-exclusive list): product, fine art and collectibles, real property improvements, work-product (as an art, graphic, and design business much of SDG's work product was stored on computers that were lost in the explosion and fire), employee time that was spent dedicated to the resulting aftermath of the explosion and fire, and not on the normal day-to-day activities of the business, business interruption damages in the form of loss sales, i.e., profits, and/or chargebacks to customers due to missed deadlines, and increased interest charges due to lag times.

50320722.3

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

273.     Simply put, the destruction of SDG's headquarters shuttered its business for at least two months and otherwise delayed potential sales for much longer.

274.     AT&T's actions in this regard were taken with gross negligence and/or with willful and wanton disregard for the rights of SDG and therefore subjects AT&T to punitive damages.

WHEREFORE, SDG respectfully prays that this court enter judgment in favor of SDG and against AT&T and award SDG actual and compensatory damages, special damages including lost profits and business interruption damages, punitive damages, and for SDG's costs, attorneys' fees, and any other relief this court may deem just and proper.

## COUNT XII
## RESPONDEAT SUPERIOR
### (SDG v. MasTec)

275.     Paragraphs 1 through 116 of this Petition are incorporated by reference as if fully set forth herein.

276.     As set forth in Counts IX-X, which are fully incorporated herein, Four Winds's gross incompetence and negligence resulted in the complete destruction of SDG's headquarters.

277.     Such acts and omissions were committed within the scope or apparent scope of Four Winds's association with MasTec, and as such MasTec is vicariously liable to SDG to the same extent as Four Winds.

278.     In particular, SDG has sustained the following losses (a non-exclusive list): product, fine art and collectibles, real property improvements, work-product (as an art, graphic, and design business much of SDG's work product was stored on computers that were lost in the explosion and fire), employee time that was spent dedicated to the resulting aftermath of the explosion and fire, and not on the normal day-to-day activities of the business, business

41

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

interruption damages in the form of loss sales, i.e., profits, and/or chargebacks to customers due to missed deadlines, and increased interest charges due to lag times.

279.    Simply put, the destruction of SDG's headquarters shuttered its business for at least two months and otherwise delayed potential sales for much longer.

280.    MasTec's actions in this regard were taken with gross negligence and/or with willful and wanton disregard for the rights of SDG and therefore subjects MasTec to punitive damages.

WHEREFORE, SDG respectfully prays that this court enter judgment in favor of SDG and against MasTec and award SDG actual and compensatory damages, special damages including lost profits and business interruption damages, punitive damages, and for SDG's costs, attorneys' fees, and any other relief this court may deem just and proper

## COUNT XIII
## RES IPSA LOQUITOR
### (SDG v. All Defendants)

281.    Paragraphs 1 through 116 of this Petition are incorporated by reference as if fully set forth herein.

282.    Both common law and § 319.035.1, RSMo., requires Defendants to excavate in a safe and prudent manner.

283.    Upon information and belief, Defendants breached this duty by, amongst other items:

    a.   failing to abide by the safety statutes of §§ 319.025 and 319.026;

    b.   failing to properly inspect the excavation site to determine the location of USIC markings, which, in turn, would have identified the location of the underground natural gas line;

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

   c.   failing to remove the snow to reveal the USIC markings;

   d.   failing to dig a pothole to unearth the natural gas line so that proper measurements could be taken regarding its location and so that the directional boring equipment could successfully navigate around the line;

   e.   failing to install a beacon in the drilling head of the directional borer so that the drilling head could be safely guided;

   f.   failing to properly prepare the area before beginning the excavation work;

   g.   failing to obtain a permit for the work;

   h.   failing to timely identify the release of natural gas;

   i.   failing to cease work after it should have realized that natural gas had been released causing the spark that ignited the natural gas;

   j.   failing to call proper authorities in a timely manner after realizing that it struck the natural gas line causing the release of natural gas;

   k.   failing to recognize the dangerous condition they created;

   l.   failing to respond appropriately to the situation they created;

   m.   failing to advise Four Winds that the proposed boring path intersected with the underground natural gas line;

   n.   failing to comprehend that the yellow markings that were seen or should have been seen during the February 3, 2014, walk-through indicated a natural gas line was present; and/or

   o.   by otherwise acting negligently in the performance of the excavation work.

      284.   Defendants' failure to excavate in a safe and prudent matter led to the drill bit piercing an underground natural gas line, which caused natural gas to build up at 2222 Menard.

43

50320722.3

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

285.   The natural gas was then ignited and resulted in an explosion that destroyed SDG's headquarters.

286.   Defendants had a duty to SDG and other residents to operate in a safe and prudent matter to avoid such foreseeable tragedies.

287.   Indeed, the statutes listed above were designed to protect residents such as SDG who could be harmed by excavators drilling holes in natural gas lines.

288.   The explosion and fire is of the kind of which ordinarily occurs due to someone's negligence.

289.   The explosion and fire was caused by an instrumentality, namely the boring activities, under the control of Defendants.

290.   Defendants have superior knowledge or access to information as to how they caused the explosion and fire.

291.   SDG's damages resulting from Defendants' gross negligence are substantial.

292.   In particular, SDG has sustained the following losses (a non-exclusive list): product, fine art and collectibles, real property improvements, work-product (as an art, graphic, and design business much of SDG's work product was stored on computers that were lost in the explosion and fire), employee time that was spent dedicated to the resulting aftermath of the explosion and fire, and not on the normal day-to-day activities of the business, business interruption damages in the form of loss sales, i.e., profits, and/or chargebacks to customers due to missed deadlines, and increased interest charges due to lag times.

293.   Simply put, the destruction of SDG's headquarters shuttered its business for at least two months and otherwise delayed potential sales for much longer.

50320722.3

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

294.   Defendants' actions in this regard were taken with gross negligence and/or with willful and wanton disregard for the rights of SDG and therefore subjects Defendants to punitive damages.

295.   The Missouri Public Service Commission, after a full inspection of this incident, determined that the damage was caused by the gross incompetence displayed by Defendants.

WHEREFORE, SDG respectfully prays that this court enter judgment in favor of SDG and against Defendants, jointly and severally, and award SDG actual and compensatory damages, special damages including lost profits and business interruption damages, punitive damages, and for SDG's costs, attorneys' fees, and any other relief this court may deem just and proper.

## COUNT XIV
## NEGLIGENT HIRING/RETENTION
### (SDG v. AT&T and MasTec)

296.   Paragraphs 1 through 116 of this Petition are incorporated by reference as if fully set forth herein.

297.   Though the crew was based in South Dakota, Four Winds has failed to register with the South Dakota Secretary of State to do business in the State of South Dakota.

298.   Likewise, Four Winds has failed to register with the Missouri Secretary of State to do business in the State of Missouri and failed to obtain the necessary permits from the City of St. Louis.

299.   Four Winds was unqualified to perform the work it was hired to do.

300.   For example, after Four Winds ruptured the natural gas line, when Mr. Dullovi asked the crew if the fire department should be called, one of the crew members said, words to the effect, "No, that happens all the time when we drill."

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

301.    Four Winds's failure to locate the markings provided by USIC and/or follow state and local statute and regulations further demonstrates Four Winds's ineptitude.

302.    Even two employees of SDG were able to identify potential issues with Four Winds's excavating methods only to be rebuked by Four Winds when they confronted Four Winds with their concerns.

303.    Four Winds should have been trained to follow Missouri statutes and regulations, which were all designed with safety in mind.

304.    Had Four Winds followed Missouri law and regulations, the gas line would have been identified and the disaster averted.

305.    AT&T and MasTec's failure to qualify, train, or supervise the excavation work contributed to and/or caused the February 5, 2014 explosion.

306.    Given the Four Winds's crew prior statements, the crew's misconduct was consistent with Four Winds's dangerous proclivities.

307.    AT&T and MasTec knew or should have known of Four Winds's ineptitude.

308.    Based on the foregoing, AT&T and MasTec failed to hire a skilled and competent contractor.

309.    SDG's damages resulting from the incident are substantial.

310.    In particular, SDG has sustained the following losses (a non-exclusive list): product, fine art and collectibles, real property improvements, work-product (as an art, graphic, and design business much of SDG's work product was stored on computers that were lost in the explosion and fire), employee time that was spent dedicated to the resulting aftermath of the explosion and fire, and not on the normal day-to-day activities of the business, business

46

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

interruption damages in the form of loss sales, i.e., profits, and/or chargebacks to customers due to missed deadlines, and increased interest charges due to lag times.

311.    Simply put, the destruction of SDG's headquarters shuttered its business for at least two months and otherwise delayed potential sales for much longer.

312.    AT&T and MasTec's actions in this regard were taken with gross negligence and/or with willful and wanton disregard for the rights of SDG and therefore subjects them to punitive damages.

WHEREFORE, SDG respectfully prays that this court enter judgment in favor of SDG and against AT&T and MasTec, jointly and severally, and award SDG actual and compensatory damages, special damages including lost profits and business interruption damages, punitive damages, and for SDG's costs, attorneys' fees, and any other relief this court may deem just and proper.

## COUNT XV
## NEGLIGENT SUPERVISION
## (SDG v. AT&T and MasTec)

313.    Paragraphs 1 through 116 of this Petition are incorporated by reference as if fully set forth herein.

314.    Given Four Winds's known incompetence as set forth in Paragraph 198, which is incorporated herein by reference, AT&T and MasTec had a duty to supervise the work of Four Winds.

315.    AT&T and MasTec's breach of that duty directly caused SDG's damages.

316.    SDG has sustained the following losses (a non-exclusive list): product, fine art and collectibles, real property improvements, work-product (as an art, graphic, and design business much of SDG's work product was stored on computers that were lost in the explosion

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

and fire), employee time that was spent dedicated to the resulting aftermath of the explosion and fire, and not on the normal day-to-day activities of the business, business interruption damages in the form of loss sales, i.e., profits, and/or chargebacks to customers due to missed deadlines, and increased interest charges due to lag times.

317.     Simply put, the destruction of SDG's headquarters shuttered its business for at least two months and otherwise delayed potential sales for much longer.

318.     AT&T and MasTec's actions in this regard were taken with gross negligence and/or with willful and wanton disregard for the rights of SDG and therefore subjects them to punitive damages.

WHEREFORE, SDG respectfully prays that this court enter judgment in favor of SDG and against AT&T and MasTec, jointly and severally, and award SDG actual and compensatory damages, special damages including lost profits and business interruption damages, punitive damages, and for SDG's costs, attorneys' fees, and any other relief this court may deem just and proper.

**COUNT XVI**
**BREACH OF CONTRACT**
**(SDG v. AT&T)**

319.     Paragraphs 1 through 116 of this Petition are incorporated by reference as if fully set forth herein.

320.     On or about October 15, 2013, SDG signed a Multi-Services Agreement ("Agreement") with AT&T wherein for money consideration, AT&T provided internet and data services to SDG.

321.     As part of this Agreement, AT&T was to provide facilities and equipment so that services could be provided.

50320722.3

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

322.    In the instant matter, in order to provide the services, AT&T needed to install underground fiber optic cable from its main line to SDG's headquarters.

323.    AT&T contracted this work to MasTec.

324.    MasTec previously informed AT&T that it could subcontract this work to Four Winds.

325.    Regardless, pursuant to the Agreement, AT&T represented that it would "remain financially responsible for the performance of [its subcontractor's] obligations."

326.    During the installation process, AT&T, via its hired help, bored into the ground and struck the natural gas line.

327.    Natural gas then built up in the basement of SDG's headquarters, wherein it was ignited.

328.    The resulting blast completely destroyed SDG's headquarters and everything in it.

329.    AT&T's failure to properly install the fiber optic cable to render its internet services constitutes a breach of the Agreement.

330.    SDG fully complied with its obligations under the Agreement.

331.    As a result of AT&T's breach, SDG has sustained the following losses (a non-exclusive list): product, fine art and collectibles, real property improvements, work-product (as an art, graphic, and design business much of SDG's work product was stored on computers that were lost in the explosion and fire), employee time that was spent dedicated to the resulting aftermath of the explosion and fire, and not on the normal day-to-day activities of the business, business interruption damages in the form of loss sales, i.e., profits, and/or chargebacks to customers due to missed deadlines, and increased interest charges due to lag times.

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

332.    Simply put, the destruction of SDG's headquarters shuttered its business for at least two months and otherwise delayed potential sales for much longer.

WHEREFORE, SDG respectfully prays that this court enter judgment in favor of SDG and against AT&T and award SDG actual and compensatory damages, special damages including lost profits and business interruption damages, and for SDG's costs, attorneys' fees, and any other relief this court may deem just and proper.

## COUNT XVII
## NEGLIGENT MISREPRESENTATION
## (SDG v. AT&T)

333.    Paragraphs 1 through 116 of this Petition are incorporated by reference as if fully set forth herein.

334.    At all times, AT&T, through its words and actions, represented that AT&T would install the aforesaid underground fiber optic cable.

335.    Indeed, on or about October 16, 2014, Don Ludwinski, an AT&T employee, emailed Mr. Valley a PowerPoint titled, "AT&T Ethernet Service Installation Customer Site Preparation Document – Overview."

336.    This document detailed and explained the installation process of the fiber optic cable.

337.    This information was supplied by AT&T in its normal course of business.

338.    AT&T represented, "AT&T strives to provide a smooth and successful installation experience for our Customers. **We** will do all that **we** can to install you service on time and in a quality manner." (emphasis added)

339.    AT&T further stated that there must be coordination between the Customer, i.e., SDG, and AT&T or Access Provider Engineering Representative ("Access Engineer").

50

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

340.    The Access Engineer was AT&T's point person responsible for viewing the site, creating a site plan for installation, and verifying that the site meets all of AT&T's suitability requirements.

341.    In other words, the Access Engineer was responsible for the installation of the fiber optic cable.

342.    The Access Engineer was charged with not only viewing the site, but meeting with the Customer to discuss and coordinate the installation of the fiber optic cable.

343.    On November 5, 2013, Becky L. Loyet, a representative and/or employee of AT&T Services, Inc., and Don Ludwinski, made a site visit to 2222 Menard.

344.    She met with Bret Schnitker, Jr. regarding the site readiness requirements.

345.    Thus, at all times Ms. Loyet, an AT&T employee and representative, was the Access Engineer.

346.    On November 6, 2013, Ms. Loyet thanked Bret Schnitker, Jr. for placing the order, recounted her site visit, and notified SDG that prior to the installation of the fiber optic cable, SDG must first install a 110 V dedicated outlet (which it did).

347.    Regardless, during the entire site preparation process, SDG met with, and only with AT&T employees.

348.    Moreover, during the entire pre-installation process, SDG only corresponded with AT&T employees.

349.    At no point did AT&T ever advise SDG that an unlicensed company would ultimately perform the installation.

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

350.    At no point in any of the material it provided did AT&T identify that either MasTec or Four Winds would ultimately attempt to follow the Access Engineer's installation plan.

351.    At no point did AT&T ever advise SDG that it had a preexisting contract with MasTec which authorized MasTec to perform the installation work.

352.    At no point did AT&T ever advise SDG that it previously received a notice from MasTec authorizing Four Winds to perform this type of installation work.

353.    Given the preexisting contracts and/or otherwise preexisting knowledge that another entity apart from AT&T would be actually installing the fiber optic cable, AT&T had a duty to disclose the identity of the actual installers either in its site installation material and/or orally so as to allow SDG to thoroughly vet the subcontractors prior to any work.

354.    AT&T likewise failed to exercise reasonable care and competence by withholding such vital information from SDG.

355.    AT&T's omission amounted to supplying false information, especially in the context that all material and dialogue regarding the installation of the underground fiber optic cable was between SDG and AT&T.

356.    SDG justifiably relied on the information AT&T supplied.

357.    Because of AT&T's omissions, SDG did not research into the at the time unknown installer, i.e., Four Winds and MasTec.

358.    If SDG had, it would have learned that Four Winds was not registered in the State of Missouri, not registered in the state in which the work crew hailed, and was otherwise unfit to do the task at hand.

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

359.    If SDG had known of this, SDG would not have allowed Defendants access to the property – access in which that caused the complete destruction of SDG's headquarters.

360.    AT&T actions in this regard were taken with gross negligence and/or with willful and wanton disregard for the rights of SDG and therefore subjects them to punitive damages.

WHEREFORE, SDG respectfully prays that this court enter judgment in favor of SDG and against AT&T and award SDG actual and compensatory damages, special damages including lost profits and business interruption damages, punitive damages, and for SDG's costs, attorneys' fees, and any other relief this court may deem just and proper.

### COUNT XVIII
### RECKLESSNESS
### (All Plaintiffs v. All Defendants)

361.    Paragraphs 1 through 358 of this Petition are incorporated by reference as if fully set forth herein.

362.    Defendants have acted intentionally in using careless, dangerous and unreasonably risky methods in conjunction with their preparation, supervision, hiring,  and installation of underground fiber optic cable.

363.    Defendants knew or had reason to know that the facts and circumstances of their actions would lead a reasonable person to realize that such conduct would create an unreasonable risk of bodily harm.

364.    Defendants also knew or had reason to know that the facts and circumstances of their actions would lead a reasonable person to realize such conduct would create a high degree of probability that substantial harm will result.

365.    As described in the preceding paragraphs, Defendants' conduct has caused Plaintiffs to suffer substantial injuries and damages in an amount exceeding the jurisdictional threshold of this court.

53

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

366.   Defendants acted with reckless indifference to the rights of Plaintiffs. Accordingly, an award of punitive damages is warranted by Defendants' conduct.

WHEREFORE, Plaintiffs pray for judgment in their favor against Defendants for damages in an amount in excess of the jurisdictional threshold of this court, for punitive damages, and for such other and further relief as the court may deem just and proper.

Respectfully submitted,

POLSINELLI PC

By: /s/ *ERIC M. TRELZ*
    Eric M. Trelz (#37248)
    etrelz@polsinelli.com
    Peter A. Corsale (#57220)
    pcorsale@polsinelli.com
    100 S. Fourth Street, Suite 1000
    St. Louis, MO 63102
    (314) 889-8000
    Fax No.: (314) 231-1776

*ATTORNEYS FOR PLAINTIFF*
*STARS INVESTMENTS GROUP, LLC,*
*STAR'S DESIGN GROUP, INC., BRET*
*SCHNITKER, AND KELLY GREENE*

**1522-CC10261**

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

## IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
## STATE OF MISSOURI

| | | |
|---|---|---|
| STARS INVESTMENT GROUP, LLC,<br>STAR'S DESIGN GROUP, INC., BRET<br>SCHNITKER, AND KELLY GREENE, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No: |
| vs. | ) ) | |
| AT&T Corp., et al. | ) ) | Division No. |
| Defendants. | ) ) | |

## MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER

COME NOW Plaintiffs Stars Investment Group, LLC, Star's Design Group, Inc., Bret Schnitker and Kelly Greene (collectively, "Plaintiffs"), by and through their undersigned counsel, and herewith requests that Summonses directed to Defendants be forwarded to Plaintiff's Counsel for service by a Special Process Server as follows:

| **DEFENDANT** | **PROCESS SERVER** |
|---|---|
| AT&T Corp.<br>Corporation Company, Registered Agent<br>120 S. Central Ave.<br>St. Louis, MO 63105 | STLCOURTFILING.COM<br>Brian Lilley<br>11475 Olde Cabin Rd., Ste 230<br>St. Louis, MO 63141 |
| MasTec North America, Inc.<br>CSC-Lawyers Incorporating Service Company,<br>Registered Agent<br>221 Bolivar Street<br>Jefferson City MO 65101 | Central Missouri Process Servers<br>David Roberts<br>620-B East High Street<br>Jefferson City, MO 65101 |
| Four Winds Construction, LLC<br>Bart S. Clark, Registered Agent<br>102 N. Marshall St., Ste 2<br>Slater, IA 50244 | Hawkeye State Process Server LLC<br>Tom Boyle<br>100 E. Dovetail Drive<br>Coralville IA 52241 |

50865862.1

Respectfully submitted,

POLSINELLI PC

By: /s/ *ERIC M. TRELZ*

    Eric M. Trelz (#37248)
    etrelz@polsinelli.com
    Peter A. Corsale (#57220)
    pcorsale@polsinelli.com
    100 S. Fourth Street, Suite 1000
    St. Louis, MO 63102
    (314) 889-8000
    Fax No.: (314) 231-1776

*ATTORNEYS FOR PLAINTIFF*
*STARS INVESTMENTS GROUP, LLC,*
*STAR'S DESIGN GROUP, INC., BRET*
*SCHNITKER, AND KELLY GREENE*

2

**1522-CC10261**

Electronically Filed - City of St. Louis - July 31, 2015 - 11:23 AM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

| | | |
|---|---|---|
| STARS INVESTMENT GROUP, LLC,<br>STAR'S DESIGN GROUP, INC., BRET<br>SCHNITKER, AND KELLY GREENE, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No: |
| vs. | ) ) | |
| AT&T Corp., et al. | ) ) | Division No. |
| Defendants. | ) ) | |

## ENTRY OF APPEARANCE

COME NOW Peter A. Corsale and the law firm of Polsinelli PC and hereby enter their

appearances on behalf of Plaintiffs Stars Investment Group, LLC, Star's Design Group, Inc., Bret

Schnitker and Kelly Greene.

Dated:  July 31, 2015

Respectfully submitted,

POLSINELLI PC

By: /s/*PETER A. CORSALE*
    Eric M. Trelz (#37248)
    etrelz@polsinelli.com
    Peter A. Corsale (#57220)
    pcorsale@polsinelli.com
    100 S. Fourth Street, Suite 1000
    St. Louis, MO 63102
    (314) 889-8000
    Fax No.: (314) 231-1776

*ATTORNEYS FOR PLAINTIFF*
*STARS INVESTMENTS GROUP, LLC,*
*STAR'S DESIGN GROUP, INC., BRET*
*SCHNITKER, AND KELLY GREENE*

1522-CC10261

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

STARS INVESTMENT GROUP, LLC,    )
STAR'S DESIGN GROUP, INC., BRET )
SCHNITKER, AND KELLY GREENE,    )
                                )
        Plaintiffs,             )       Case No:
                                )
vs.                             )
                                )
AT&T Corp., et al.              )
                                )       Division No.
        Defendants.             )
                                )

**FILED**
AUG 04 2015
22ND JUDICIAL CIRCUIT
CIRCUIT CLERK'S OFFICE
BY _____ DEPUTY

## MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER

COME NOW Plaintiffs Stars Investment Group, LLC, Star's Design Group, Inc., Bret Schnitker and Kelly Greene (collectively, "Plaintiffs"), by and through their undersigned counsel, and herewith requests that Summonses directed to Defendants be forwarded to Plaintiff's Counsel for service by a Special Process Server as follows:

| DEFENDANT | PROCESS SERVER |
|---|---|
| AT&T Corp.<br>Corporation Company, Registered Agent<br>120 S. Central Ave.<br>St. Louis, MO 63105 | STLCOURTFILING.COM<br>Brian Lilley<br>11475 Olde Cabin Rd., Ste 230<br>St. Louis, MO 63141 |
| MasTec North America, Inc.<br>CSC-Lawyers Incorporating Service Company,<br>Registered Agent<br>221 Bolivar Street<br>Jefferson City MO 65101 | Central Missouri Process Servers<br>David Roberts<br>620-B East High Street<br>Jefferson City, MO 65101 |
| Four Winds Construction, LLC<br>Bart S. Clark, Registered Agent<br>102 N. Marshall St., Ste 2<br>Slater, IA 50244 | Hawkeye State Process Server LLC<br>Tom Boyle<br>100 E. Dovetail Drive<br>Coralville IA 52241 |

*[handwritten signature]*

50865862.1

Electronically Filed - City of St. Louis - July 31, 2015 - 11:18 AM

Respectfully submitted,

POLSINELLI PC

By: /s/*ERIC M. TRELZ*
    Eric M. Trelz (#37248)
    etrelz@polsinelli.com
    Peter A. Corsale (#57220)
    pcorsale@polsinelli.com
    100 S. Fourth Street, Suite 1000
    St. Louis, MO 63102
    (314) 889-8000
    Fax No.: (314) 231-1776

*ATTORNEYS FOR PLAINTIFF*
*STARS INVESTMENTS GROUP, LLC,*
*STAR'S DESIGN GROUP, INC., BRET*
*SCHNITKER, AND KELLY GREENE*

2



# IN THE 22ND JUDICIAL CIRCUIT COURT OF CITY OF ST LOUIS, MISSOURI

| Judge or Division:<br>BRYAN L HETTENBACH | Case Number: 1522-CC10261 |
|---|---|
| Plaintiff/Petitioner:<br>STARS INVESTMENT GROUP, LLC | Plaintiff's/Petitioner's Attorney/Address<br>ERIC MARTIN TRELZ<br>100 S 4TH ST<br>SUITE 1100<br>SAINT LOUIS, MO  63102 |
| vs. | |
| Defendant/Respondent:<br>AT& T CORPORATION | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO  63101 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:  AT& T CORPORATION
**Alias:**
R/AGT CORPORATION COMPANY
120 S CENTRAL AVE
CLAYTON, MO 63105

**SPECIAL PROCESS SERVER**

COURT SEAL OF

        You are summoned to appear before this court and to file your pleading to the petition, a copy of
which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the
above address all within 30 days after receiving this summons, exclusive of the day of service.  If you fail to
file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

CITY OF ST LOUIS

**AUGUST 4, 2015**
Date

*Thomas Kloeppinger*

Thomas Kloeppinger
Circuit Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer:  Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by:  (check one)
- [ ] delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
- [ ] leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.
- [ ] (for service on a corporation) delivering a copy of the summons and a copy of the petition to
  _____ (name) _____ (title).
- [ ] other _____.
Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____
        Date                                    Notary Public

**Sheriff's Fees, if applicable**

| Summons | $ |
| Non Est | $ |
| Mileage | $ ( ___ miles @ $ . ___ per mile) |
| Total | $ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of
suits, see Supreme Court Rule 54.



## IN THE 22ND JUDICIAL CIRCUIT COURT OF CITY OF ST LOUIS, MISSOURI

| Judge or Division: | Case Number:  1522-CC10261 |
|---|---|
| BRYAN L HETTENBACH | |
| Plaintiff/Petitioner: | Plaintiff's/Petitioner's Attorney/Address |
| STARS INVESTMENT GROUP, LLC | ERIC MARTIN TRELZ |
| | 100 S 4TH ST |
| | SUITE 1100 |
| vs. | SAINT LOUIS, MO  63102 |
| Defendant/Respondent: | Court Address: |
| AT& T CORPORATION | CIVIL COURTS BUILDING |
| Nature of Suit: | 10 N TUCKER BLVD |
| CC Breach of Contract | SAINT LOUIS, MO  63101 |

(Date File Stamp)

### Summons in Civil Case

The State of Missouri to:  MASTEC NORTH AMERICA, INC.
                 Alias:

CSC-LAWYERS INCORPORATING
SERVICE COMPANY
221 BOLIVAR STREET
JEFFERSON CITY, MO 65101

**SPECIAL PROCESS SERVER**

*COURT SEAL OF*

*CITY OF ST LOUIS*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service.  If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

**AUGUST 4, 2015**
Date

*Thomas Kloeppinger*

Thomas Kloeppinger
Circuit Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer:  Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____                    _____
Printed Name of Sheriff or Server                    Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____        _____
                          Date                          Notary Public

**Sheriff's Fees, if applicable**

| Summons | $_____ |
|---|---|
| Non Est | $_____ |
| Mileage | $_____ ( _____ miles @ $ _____ per mile) |
| Total | $_____ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

 **IN THE 22ND JUDICIAL CIRCUIT COURT OF CITY OF ST LOUIS, MISSOURI**

| Judge or Division:<br>BRYAN L HETTENBACH | Case Number:  1522-CC10261 |
|---|---|
| Plaintiff/Petitioner:<br>STARS INVESTMENT GROUP, LLC | Plaintiff's/Petitioner's Attorney/Address:<br>ERIC MARTIN TRELZ<br>100 S 4TH ST<br>SUITE 1100<br>SAINT LOUIS, MO  63102 |
| vs. | |
| Defendant/Respondent:<br>AT& T CORPORATION | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO  63101 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  FOUR WINDS CONSTRUCTION LLC
Alias:

C/O RAGT BART S CLARK
102 N MARSHALL ST
SUITE 2
SLATER, IA  50244

*COURT SEAL OF*

*CITY OF ST LOUIS*

> You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

| | SPECIAL PROCESS SERVER |
|---|---|

**AUGUST 4, 2015**
Date

*Thomas Kloeppinger*

Thomas Kloeppinger
Circuit Clerk

Further Information:

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ of _____ County, _____ (state).
3.  I have served the above summons by: (check one)
    ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
    ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
    ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
    ☐ other (describe) _____

Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____        _____
Printed Name of Sheriff or Server        Signature of Sheriff or Server

**Subscribed and Sworn** To me before this _____ (day) _____ (month) _____ (year)
I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

_____
Signature and Title

| Service Fees, if applicable | | |
|---|---|---|
| Summons | $ | |
| Non Est | $ | |
| Mileage | $ | ( _____ miles @ $ _____ per mile) |
| Total | $ | |

See the following page for directions to clerk and to officer making return on service of summons.

## Directions to Clerk

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54. The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered. The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service. The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy. The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy. If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons. This form is not for use in attachment actions. (See Rule 54.06, 54.07 and 54.14)

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent. If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may he made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court. The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.