UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| STARS INVESTMENT GROUP, LLC and STAR'S DESIGN GROUP, INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 4:15CV01370 AGF |
| AT&T CORP., MASTEC NORTH AMERICA, INC., and FOUR WINDS CONSTRUCTION, LLC, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motions (Doc. No. 69 & 70) for summary judgment filed by Defendants AT&T Corp. ("AT&T") and MasTec North America, Inc. ("MasTec"). Plaintiffs' claims against these Defendants (two of the three Defendants in this case) arise out of a gas line explosion, which occurred during the installation of underground fiber optic cable lines on or near Plaintiffs' property and which destroyed Plaintiffs' property. For the reasons set forth below, Defendants' motions will be granted in part and denied in part.

## BACKGROUND

For purposes of these summary judgment motions, the record establishes the following. In 2013, Plaintiff Star's Design Group, Inc. ("SDG") contracted with AT&T to install underground fiber optic cable lines into its headquarters office, located in a

building owned by Plaintiff Stars Investment Group, LLC ("SIG"),[1] at 2222 Menard Street, St. Louis, Missouri. The contract between SDG and AT&T provided that "AT&T may . . . subcontract work to be performed under the Agreement, but AT&T will in each such case remain financially responsible for the performance of such obligations." (Doc. No. 69-4 at 5.) The contract also included a "Limitation of Liability" provision, limiting AT&T's liability for damages arising out of a breach of the contract to "the applicable credits specified in the service publication or, if no credits are specified, an amount equal to the total net charges to the customer for service to which such breach relates during the period in which such breach occurs and continues." *Id.* at 4. However, the Limitation of Liability provision stated that it did "not apply to bodily injury, death or damage to real or tangible property directly caused by AT&T's negligence or intentional misconduct." *Id.*

In affidavits submitted in response to Defendants' motions, two of SDG's executive officers attested that, in approving and executing the contract with AT&T, they interacted exclusively with AT&T personnel and relied on AT&T's representations that "AT&T would be conducting the project and ensuring its proper completion." (Doc. Nos. 80-4 & 80-5.)

AT&T subcontracted the SDG project to MasTec for a flat fee of $6,900, pursuant to a contract AT&T had previously entered into with MasTec to provide fiber optic cable installation services for AT&T's customers. MasTec, in turn, subcontracted the SDG

---

[1] It is not clear from the record whether and how SDG and SIG are affiliated.

project to Defendant Four Winds Construction, LLC ("Four Winds"), also for a flat fee.[2] AT&T's corporate representatives testified by deposition that they did not know that MasTec would be hiring Four Winds to complete the project and that they did not learn of Four Winds' existence until after the gas explosion at issue in this lawsuit.

**AT&T's Contract With MasTec**

In its contract with AT&T, MasTec agreed to perform all work "as an independent contractor and not as the agent or employee of AT&T." MasTec further agreed that its personnel "shall be considered solely the employees or agents of [MasTec] and not employees or agents of AT&T"; that MasTec was responsible for payment of all compensation and benefits to its employees; and that MasTec retained "full control and supervision over the performance" of the contract. (Doc. No. 69-2.) Although the contract allowed AT&T to "have inspectors at the job site to inspect the performance and quality of the Work and to ensure [MasTec's] compliance" with order specifications and the contract's terms, the contract stated that "[a]ny AT&T inspectors, employees or agents . . . shall have no authority to direct or advise [MasTec] concerning the manner by which the Work is to be performed." *Id.* The contract provided that MasTec had "sole authority, responsibility and control over the Work." *Id.*

William Galluzzo, a contract coordinator for AT&T, testified by deposition as AT&T's corporate representative regarding how AT&T handled fiber optic cable installation projects performed by contractors such as MasTec during the relevant time period. According to Galluzzo, AT&T designed the placement of fiber optic cables, and

---

[2] The record does not indicate the amount of this fee.

AT&T's contractors "simply follow[ed] the design that [AT&T] provide[d]." (Doc. No. 79-6 at 2.) Galluzzo testified that designing the cable placement involved "[k]nowing where the customer location is, knowing where our existing facilities are where we have to connect to, and . . . finding a feasible route, whether it be aerial, buried or underground, to get the facilities from our main infrastructure to the customer." *Id.* AT&T looked for existing utilities when plotting their cable routes and made adjustments if existing utilities were exposed after the initial route was plotted. These design adjustments had to be approved by AT&T.

Galluzzo further testified that AT&T was responsible for evaluating which permits were necessary for cable installation projects. For projects in the City of St. Louis, AT&T would apply for a permit from the City of St. Louis and after a permit was obtained, the AT&T contractor would use the city permit number to apply for a separate excavation permit. Galluzzo testified that AT&T provided materials such as "[c]ables, cabinets, terminals, conduit, inner duct, and manholes" for cable installation jobs. *Id.* at 16.

According to Galluzzo, once a fiber optic cable installation project began, AT&T's contractors were to report to AT&T employees known as contract coordinators, such as Galluzzo. These contract coordinators were considered "field managers," and their job was to confirm that AT&T's contractors were following proper safety and quality procedures, including procedures to locate any existing utilities. Galluzzo testified that contractors were supposed to notify AT&T when they or their subcontractors started a particular job, and were supposed to send AT&T a daily work

log of what they or their subcontractors were going to be working on the following day. Galluzzo testified that AT&T had "all kinds of guidelines" for its contractors, including guidelines for the "[d]epth that fiber cable should be buried at, recommended depth." *Id.* at 21. Galluzzo further testified that AT&T had authority to tell contractors not to start work on a particular day if, for example, the proper permits had not been obtained.

According to Galluzzo, AT&T contract coordinators not only evaluated the finished result of projects for quality control, but also "visit[ed] jobs every day" and were "out in the field every day." Galluzzo testified that "every active project that we have going on we're going by and we're making sure that, you know, [contractors] have the proper work area protection, you know, signage on their trucks that they're representing AT&T properly." *Id.* at 9.

**MasTec's Contract With Four Winds**

Like the contract between AT&T and MasTec, the contract between MasTec and Four Winds provided that Four Winds was "engaged as an independent contractor and is not an agent or employee of [MasTec]." (Doc. No. 69-3.) The contract provided that Four Winds would have "full control and supervision of the performance of the Work," but that MasTec "may deny access to the Work site to any employee or other agent of [Four Winds] who is not in compliance with the requirements of the [contract]." *Id.* Under the contract, Four Winds was responsible for payment of all compensation and benefits to its employees, and was required to supply all labor, tools, equipment, vehicles, fuel, and other materials necessary to complete the work. *Id.*

MasTec's corporate representative, Randall Butler, testified by deposition regarding MasTec's performance of fiber optic cable installation for AT&T, including MasTec's use of subcontractors. Butler, a project coordinator for MasTec who worked exclusively on AT&T contracts, testified that MasTec typically walked through cable installation projects with its subcontractors, including by instructing its subcontractors where to place the cable lines. Butler indicated that MasTec communicated with subcontractors regularly to get updates on projects, and also performed quality control checks after subcontractors completed projects.

**SDG Cable Installation Project**

According to Galluzzo, AT&T set the start date for the SDG cable installation project as February 3, 2014, and the completion date as February 10, 2014. Although AT&T had not received a permit from the City of St. Louis by February 3, 2014, AT&T never adjusted the project start date.

On January 30, 2014, MasTec contacted the Missouri One Call System to locate existing underground utilities or facilities in the area of installation for the SDG project. On February 3, 2014, employees from United States Infrastructure Corporation marked the existing underground utilities in the area, including a gas line which was marked with yellow paint according to industry standards.

Later in the day on February 3, 2014, after all utilities in the area had been marked, MasTec's Butler met with Jim McElveen, a Four Winds supervisor, at the dig site. During this meeting, Butler identified the utility location marks for McElveen and "walked over" the job with McElveen, including by instructing McElveen where to place

the cable lines. Butler instructed McElveen that Four Winds should not start the installation until AT&T had received proper permits from the City of St. Louis, and until Four Winds obtained a license to perform work in City of St. Louis[3] and called in a request for its own "utility line locates." Butler testified that he informed McElveen during the February 3rd meeting that AT&T had not yet obtained a city permit. Butler directed McElveen to bring all required permits and licenses, once obtained, to MasTec before starting the installation.

On February 5, 2014, snow covered the job site and obscured the utility markings. AT&T also had not yet secured a permit from the City of St. Louis by that day, and Four Winds had not obtained a license or excavation permit to perform work in St. Louis. Nevertheless, Four Winds proceeded with the cable installation. No one from AT&T or MasTec was on the job site on February 5, 2014, and neither AT&T nor MasTec was aware that Four Winds was beginning work on that day. All members of the installation crew were Four Winds employees, and Four Winds owned the directional drill, mini excavator, trailer, and trucks used to complete the installation. During the course of the installation, the drill Four Winds was using struck the gas line running to Plaintiffs' building, causing a fire and an explosion. The fire and explosion on February 5, 2014, destroyed Plaintiffs' building and caused other property damage.

Butler testified that, had he known that Four Winds was starting the installation on February 5, 2014, he or anyone else at MasTec who had known of the circumstances

---

[3] According to Butler, Four Winds had to apply for a city license to perform work in the city, which required proof of insurance, and also had to apply for an excavation permit, which first required AT&T to obtain a city permit.

would have called McElveen and stopped Four Winds from performing the installation. Butler testified that he believed the explosion on February 5, 2014, happened because Four Winds "screwed up." (Doc. No. 80-6 at 38.)

Butler further testified that he was not personally involved in any evaluation of Four Winds before beginning the project for SDG. However, he testified that Four Winds had previously done subcontract work for MasTec in Minnesota, that he believed that Four Winds was competent and experienced, and that he had not had any issues with Four Winds until the February 5, 2014 incident.

Plaintiffs filed suit in state court on July 31, 2015. On September 3, 2015, Defendants removed the case to this Court, invoking the Court's diversity jurisdiction. In their amended complaint, both Plaintiffs assert various types of negligence claims against AT&T and MasTec.[4] Specifically, Plaintiffs assert direct negligence claims against MasTec (Counts II and X),[5] and Plaintiffs assert several claims which seek to hold AT&T and MasTec vicariously liable for Four Winds' and Four Winds' employees' conduct. Plaintiffs label these vicarious liability claims as: Respondeat Superior against AT&T and MasTec (Counts III, IV, XI, and XII), Res Ipsa Loquitur against AT&T and MasTec (Counts V and XIII), Negligent Performance of Statutory Duty against AT&T, based on

---

[4] Plaintiffs also assert tort claims against Four Winds, but Four Winds has not moved for summary judgment.

[5] The Court assumes that in Counts II and X, Plaintiffs are attempting to assert direct negligence claims against MasTec, rather than vicarious liability, because these Counts refer to MasTec's own allegedly negligent conduct, such as "failing to advise Four Winds that its proposed boring path intersected with the underground natural gas line." (Doc. No. 30 at 45.)

Missouri statutes applying to public utilities (Counts VIII and XVIII), and Recklessness against AT&T and MasTec (Count XIX). Plaintiffs also assert claims of Negligent Hiring/Retention (Counts VI and XIV) and Negligent Supervision (Counts VII and XV) against AT&T and MasTec. Finally, SDG asserts Breach of Contract (Count XVI) and Negligent Misrepresentation (Count XVII) claims against AT&T. In each of these counts, Plaintiffs seek "actual and consequential damages, special damages including lost profits and business interruption damages, punitive damages, and [costs and attorney's fees]." (Doc. No. 30.)

## ARGUMENTS OF THE PARTIES

AT&T and MasTec argue that summary judgment is warranted on Plaintiffs' vicarious liability claims because Four Winds and its employees were not agents of AT&T or MasTec as a matter of law. Both Defendants argue that the undisputed facts demonstrate that Four Winds was an independent subcontractor of AT&T's independent contractor, MasTec.

Next, these Defendants argue that summary judgment is warranted on Plaintiffs' negligent hiring claims because Plaintiffs have submitted no evidence that either Four Winds or MasTec was incompetent or inexperienced in the installation of underground cables. Moreover, AT&T argues that because it undisputedly did not hire Four Winds, it could not be liable for negligent hiring of Four Winds as a matter of law.

With respect to Plaintiffs' negligent supervision claims, AT&T and MasTec argue that summary judgment is warranted because Plaintiffs cannot establish two elements of

such a claim: (1) that Four Winds was acting as an agent of AT&T or MasTec, and (2) that Four Winds' employees were acting outside the scope of their agency.

MasTec also argues that summary judgment is warranted on Plaintiffs' direct negligence claims against it because Plaintiffs have submitted no evidence that MasTec, rather than Four Winds, acted negligently.

Likewise, AT&T argues that SDG's claims against it for negligent misrepresentation and breach of contract fail as a matter of law. AT&T argues that SDG's breach of contract claim fails because SDG has no evidence that AT&T (as opposed to Four Winds) is liable for SDG's damages. AT&T acknowledges that the contract between SDG and AT&T provides that AT&T must remain "financially responsible for the performance of [its subcontractor's] obligations," but AT&T argues that it has complied with this obligation by ensuring that MasTec is indemnified by insurance for all claims arising from the SDG cable installation contract, and that in any event, MasTec is not liable for any such claims. AT&T also argues that the limitation of liability provision in its contract with SDG prevents SDG from recovering the damages it seeks. Finally, AT&T argues that SDG's negligent misrepresentation claim fails as a matter of law because AT&T's contract with SDG expressly warned that AT&T may subcontract the work.

In response to Defendants' motions, Plaintiffs argue that summary judgment must be denied as to their vicarious liability claims because genuine issues of material fact exist regarding whether Four Winds and its employees were agents of MasTec and/or AT&T. Plaintiffs argue that, at this stage, they must be given the benefit of all

reasonable inferences that AT&T and/or MasTec had the right to control the cable installation project.

Plaintiffs also argue that summary judgment must be denied as to their negligent hiring claims because genuine issues of material fact exist regarding whether AT&T and MasTec each exercised reasonable care "with respect to the hiring of Four Winds." In particular, Plaintiffs point to evidence that AT&T did not know of Four Winds' existence and that Butler had not personally evaluated Four Winds at the time Four Winds was hired.

Likewise, Plaintiffs argue that genuine issues of material fact exist with respect to their negligent supervision claims, both as to Four Winds' status as an agent (versus an independent contractor) and as to whether Four Winds' employees acted outside the scope of their agency by commencing the cable installation without necessary permits, in violation of governing rules and regulations.

SDG also argues that summary judgment must be denied as to its breach of contract and negligent misrepresentation claims against AT&T. SDG argues that it has offered sufficient evidence to demonstrate that AT&T breached its contract with SDG by failing to properly install the fiber optic cable. SDG contends that the contract's limitation of liability explicitly excludes property damage caused by AT&T's negligent misconduct, and a question of fact exists as to whether negligence attributable to AT&T caused the property damage here.

Finally, SDG argues that questions of fact exist regarding its negligent misrepresentation claim in light of evidence that SDG officials interacted exclusively

with AT&T personnel and were told that AT&T would be conducting the project and ensuring its proper completion.[6]

Neither AT&T nor MasTec has filed a reply, and the time to do so has passed.

## **DISCUSSION**

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be entered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the record. *Sokol & Assocs., Inc. v. Techsonic Indus., Inc.*, 495 F.3d 605, 610 (8th Cir. 2007).

**Plaintiffs' Vicarious Liability Claims Against Defendants AT&T and MasTec**

Under Missouri law, which the parties agree governs this diversity suit, "[t]he general rule is that a general contractor is not liable for . . . harm caused to another by the tortious acts or omissions of an independent contractor, while [it is] liable for the torts of [its] employees." *Sakabu v. Regency Constr. Co.*, 392 S.W.3d 494, 498 (Mo. Ct. App. 2012) (internal citations omitted). "In Missouri, in contrast to the law of some other states, employment status is a question of fact. In other words, a court applying Missouri law may decide [employment status] on summary judgment only when the material facts

---

[6] Plaintiffs have not responded to MasTec's arguments regarding Plaintiffs' direct negligence claim against MasTec.

are undisputed *and* only one reasonable conclusion can be drawn from those facts." *Gray v. FedEx Ground Package Sys., Inc.*, 799 F.3d 995, 999 (8th Cir. 2015) (internal citations omitted); *see also Johnson v. Bi–State Dev. Agency,* 793 S.W.2d 864, 867 (Mo. 1990).

"The terms subcontractor and independent contractor are not necessarily synonymous," and "simply characterizing a party an independent contractor does not make it so." *Sakabu*, 392 S.W.3d at 498-99. "[R]ather, a court must make a factual determination of independent-contractor status," *id.* at 499, and "whether or not the parties believe they are creating the relationship of master and servant" is "only one factor out of many." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 860 (8th Cir. 2010) (internal citations omitted) (applying Missouri law).

"The principal factors that Missouri courts routinely consider in determining whether one acting for another is an employee or an independent contractor for purposes of respondeat superior liability are set out in § 220(2) of the Restatement (Second) of Agency." *Id. at* 858 (citations omitted). They are:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
> (d) the skill required in the particular occupation;
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
> (f) the length of time for which the person is employed;
> (g) the method of payment, whether by the time or by the job;
> (h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and
(j) whether the principal is or is not in business.

Restatement (Second) of Agency § 220 (Am. Law Inst. 1958).

Of these factors, "the touchstone is whether the party sought to be held liable has the control or right to control the conduct of another in the performance of an act." *J.M. v. Shell Oil Co.*, 922 S.W.2d 759, 764 (Mo. 1996). "The determining factor is not whether [the defendant] actually exercised control over the work but whether [the defendant] had the *right* to exercise that control." *Bargfrede v. Am. Income Life Ins. Co.*, 21 S.W.3d 157, 162 (Mo. Ct. App. 2000) (citation omitted). That right "must extend to the 'means and manner of service' as distinguished from [merely] controlling the 'ultimate results of the service.'" *Steele v. Armour & Co.*, 583 F.2d 393, 398 (8th Cir. 1978) (quoting *Wigger v. Consumers Coop. Ass'n*, 301 S.W.2d 56, 60 (Mo. Ct. App. 1957)).

A close question is presented here, as several factors, including the terms of the contracts between AT&T and MasTec and between MasTec and Four Winds, weigh in favor of finding that Four Winds was an independent contractor. But the Court does not believe that is the only reasonable conclusion that can be drawn from the record before it. Rather, the testimony of AT&T's and MasTec's corporate representatives creates a factual question as to whether AT&T and/or MasTec had the right to control the details of Four Winds' employees' work. For example, these representatives testified that MasTec had the right to stop Four Winds' employees from beginning work on February 5, 2014, in light of the snow and the lack of permits, and that AT&T and MasTec had

some authority over the details of the cable installation. The question of agency therefore remains a question of fact to be determined based on the evidence at trial. The Court will deny Defendants' motions for summary judgment on Plaintiffs' vicarious liability claims. *See Gray*, 799 F.3d at 1003 (reversing grant of summary judgment and finding that a genuine dispute remained as to the question of agency under Missouri law where the evidence, particularly as to the control factor, was mixed).

**Plaintiffs' Negligent Hiring Claims Against AT&T and MasTec**

"To establish a claim for negligent hiring or retention [of an employee], a plaintiff must show: (1) the employer knew or should have known of the employee's dangerous proclivities, and (2) the employer's negligence was the proximate cause of the plaintiff's injuries." *Gibson v. Brewer*, 952 S.W.2d 239, 246 (Mo. 1997). Likewise, "[a]n employer is liable for the negligent action of an independent contractor only when the employer did not exercise reasonable care in hiring a competent independent contractor." *Lonero v. Dillick*, 208 S.W.3d 323, 329 (Mo. Ct. App. 2006) (citation omitted).

"It is well recognized that a contractor's negligence in conducting the work it was hired to do creates no presumption that the employer was negligent in selecting the contractor. One incident of poor judgment does not prove incompetence." *Sullivan v. St. Louis Station Assocs.*, 770 S.W.2d 352, 356 (Mo. Ct. App. 1989) (internal citation omitted) (recognizing that the same test would apply regardless of whether the claim is for negligent hiring of an employee or an independent contractor).

Plaintiffs have failed to offer evidence that Four Winds or its employees had dangerous proclivities or were incompetent beyond the single instance of negligence in

conducting the installation at issue in this case. Therefore, Plaintiffs' negligent hiring claims fail as a matter of law. *See Sullivan*, 770 S.W.2d at 356-57 (holding that where "[t]here was no proof that either contractor had a poor job safety record, a poor reputation or that either lacked sufficient expertise and experience to act in the capacity for which they were hired," and "[t]he only accusation of ability involves [the contractor's] choice of an improper method in one situation—the job which it was hired to execute," the plaintiffs "were not entitled to a jury instruction on the negligent hiring theory").

Moreover, the Court agrees with AT&T that, as AT&T did not hire or retain Four Winds, AT&T could not be liable for negligent hiring in any event. At most, AT&T had a duty of care in hiring MasTec, but Plaintiffs have offered no evidence that AT&T breached that duty, as they have offered no evidence of MasTec's incompetence. The Court will grant Defendants' motions for summary judgment on Plaintiffs' negligent hiring claims.

**Plaintiffs' Negligent Supervision Claims Against AT&T and MasTec**

A claim of negligent supervision under Missouri law implicates "the duty of a master . . . 'to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them.'" *Gibson*, 952 S.W.2d at 247 (quoting Restatement (Second) of Torts § 317 (Am. Law Inst. 1965)). Therefore, "a negligent supervision claim requires as a necessary and indispensable element that the employee be acting outside of the scope of her employment." *Nickel v. Stephens Coll.*, 480 S.W.3d 390, 402 (Mo. Ct. App. 2015). If the tortfeasor was acting

conducting the installation at issue in this case. Therefore, Plaintiffs' negligent hiring claims fail as a matter of law. *See Sullivan*, 770 S.W.2d at 356-57 (holding that where "[t]here was no proof that either contractor had a poor job safety record, a poor reputation or that either lacked sufficient expertise and experience to act in the capacity for which they were hired," and "[t]he only accusation of ability involves [the contractor's] choice of an improper method in one situation—the job which it was hired to execute," the plaintiffs "were not entitled to a jury instruction on the negligent hiring theory").

Moreover, the Court agrees with AT&T that, as AT&T did not hire or retain Four Winds, AT&T could not be liable for negligent hiring in any event. At most, AT&T had a duty of care in hiring MasTec, but Plaintiffs have offered no evidence that AT&T breached that duty, as they have offered no evidence of MasTec's incompetence. The Court will grant Defendants' motions for summary judgment on Plaintiffs' negligent hiring claims.

**Plaintiffs' Negligent Supervision Claims Against AT&T and MasTec**

A claim of negligent supervision under Missouri law implicates "the duty of a master . . . 'to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them.'" *Gibson*, 952 S.W.2d at 247 (quoting Restatement (Second) of Torts § 317 (Am. Law Inst. 1965)). Therefore, "a negligent supervision claim requires as a necessary and indispensable element that the employee be acting outside of the scope of her employment." *Nickel v. Stephens Coll.*, 480 S.W.3d 390, 402 (Mo. Ct. App. 2015). If the tortfeasor was acting

within the scope of his employment at the time of his tortious act, the master will not be liable for negligent supervision but may be vicariously liable under principles of agency. Restatement (Second) of Torts § 317 cmt. a (Am. Law Inst. 1965) (adopted by Missouri courts).[7]

Acting outside the scope of employment in this context means that "the servant is not performing the work of his employer at the time of the act or at the time he commits an intentional tort which, by definition, is not done in his role as the master's agent but rather solely for his own purposes." *Doe v. Roman Catholic Archdiocese of St. Louis*, 347 S.W.3d 588, 592 (Mo. Ct. App. 2011).

Here, Plaintiffs have alleged only that the Four Winds and its employees were acting within the scope of their employment with AT&T and/or MasTec, albeit negligently. Plaintiffs' claims therefore must rely on the principles of agency, rather than negligent supervision. The Court will grant Defendants' motions for summary judgment on Plaintiffs' negligent supervision claims.

**Plaintiffs' Direct Negligence Claim Against MasTec**

"To prevail on a cause of action in general negligence, three elements must be proven: 1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; 2) the defendant's failure to perform that duty; and 3) the plaintiff's injury was

---

[7] Missouri does not appear to recognize a negligent supervision claim arising out of supervision of an independent contractor. *Lonero v. Dillick*, 208 S.W.3d 323, 328 (Mo. Ct. App. 2006) ("Because the parties have not provided, and we cannot find, any Missouri cases applying the doctrine of negligent supervision to independent contractors, we find that a cause of action of negligent supervision cannot be sustained under these circumstances.").

proximately caused by the defendant's failure." *Smith v. Dewitt & Assocs., Inc.*, 279 S.W.3d 220, 224 (Mo. Ct. App. 2009). "A duty of care arises out of circumstances in which there is a foreseeable likelihood that particular acts or omissions will cause harm or injury," and "[t] he scope of that duty is measured by whether a reasonably prudent person would have anticipated danger and provided against it." *Id.* (Citations omitted).

Although Plaintiffs allege that MasTec acted negligently in instructing Four Winds regarding the placement of the cable lines, Plaintiffs have neither alleged nor offered evidence that it was Four Winds' adherence to MasTec's instructions, which were given at a time when the existing utility lines were marked and visible, that caused the explosion. Rather, Plaintiffs' evidence suggests that it was Four Winds' failure to adhere to such instructions (for example, by beginning work on a day when the utility line markings were not visible) that contributed to the explosion. And because Plaintiffs have not alleged or offered evidence that MasTec was on notice that Four Winds would begin work on that day, no duty arose to stop Four Winds from doing so. On this record, a jury could not reasonably conclude that MasTec was negligent. The Court will therefore grant MasTec's motion for summary judgment on Plaintiffs' direct negligence claim against it.

**SDG's Breach of Contract Claim Against AT&T**

AT&T's only arguments with respect to SDG's breach of contract claim are that AT&T cannot be held vicariously liable for Four Winds' employees' conduct as a matter of law and that, in any event, SDG's damages are limited by the limitation of liability provision in AT&T's contract with SDG. The Court rejects the first argument for the reasons set forth above. The Court also agrees with SDG that a question of fact exists as

to whether SDG's property damage was caused by negligent misconduct of Four Winds attributable to AT&T, so as to fall outside of the plain language of the limitation of liability provision. Therefore, the Court will deny AT&T's motion for summary judgment on SDG's breach of contract claim. However, the Court notes that SDG will not be permitted to recover duplicative damages. *See Norber v. Marcotte*, 134 S.W.3d 651, 661 (Mo. Ct. App. 2004) ("It is a well-settled rule in Missouri that a party cannot be compensated for the same injury twice.").

### SDG's Negligent Misrepresentation Claim Against AT&T

The elements of a claim of negligent misrepresentation under Missouri law are: "(1) the speaker supplied information in the course of his business; (2) because of a failure by the speaker to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) due to the listener's reliance on the information, the listener suffered a pecuniary loss." *Wellcraft Marine v. Lyell*, 960 S.W.2d 542, 546 (Mo. Ct. App. 1998). "The failure to prove any one of these five elements is fatal to a claim of negligent misrepresentation." *Id*.

Here, SDG has not offered evidence that AT&T made a false statement. Even viewed in the light most favorable to it, SDG's evidence does not suggest that AT&T represented that it would conduct the project without the use of subcontractors. Rather, AT&T's contract with SDG explicitly notified that AT&T may use subcontractors. And as to AT&T's alleged representation ensuring "proper completion" of the project,

Missouri courts hold that "[m]ere predictions about future behavior are typically not sufficient to meet the first element of a claim for negligent misrepresentation." *Williams v. HSBC Bank USA, N.A.*, 467 S.W.3d 836, 845 (Mo. Ct. App. 2015). The Court will grant AT&T summary judgment on SDG's negligent misrepresentation claim.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motions for summary judgment filed by Defendants AT&T Corp. ("AT&T") and MasTec North America, Inc. ("MasTec") are **GRANTED in part**, as to Plaintiffs' direct negligence claims against MasTec (Counts II and X), Plaintiffs' negligent hiring and negligent supervision claims against AT&T and MasTec (Counts VI, VII, XIV, and XV), and Plaintiff Star's Design Group, Inc.'s negligent misrepresentation claim against AT&T (Count XVII). The motions are otherwise **DENIED**. (Doc. Nos. 69 & 70.)

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of February, 2017.